**Elizabeth AVERY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00884–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 14, 1997.

Rehearing Overruled Sept. 16, 1997.

---

14. Nor do we agree generally that the existence of a duty can be found from a failure to fulfill it.

Michael D. Stewart, Houston, for Appellant.

Rock William A. Owens, Houston, for Appellee.

Before SCHNEIDER, C.J., and NUCHIA and WILSON, JJ.

## OPINION

NUCHIA, Justice.

Elizabeth Avery, appellant, appeals the trial court's termination of her parental relationship with her son, E.F. We affirm.

## FACTS

On December 12, 1993, Elizabeth Avery gave birth to her son, E.F. Because Avery had a history of drug and alcohol abuse and did not have a place to live, the Texas Department of Protective and Regulatory Services took possession of E.F. immediately after his birth. Avery, therefore, never had possession of her son, and, since his birth, she recalls seeing him only twice.

After taking possession of E.F., Victor Burks, the caseworker, went to the Harris County Psychiatric Center to inform Avery that the State had taken possession of her son. After this visit, he stated there was a period of several weeks during which he did not know Avery's whereabouts or how to reach her. He did recall, however, that Avery had visited E.F. only once from December 1993 through April 1994. Another caseworker, Manett Nelson, testified that he saw Avery visit E.F. on two occasions. He stated that her first visit was uneventful, but

that the second visit was problematic. During that visit, Nelson left Avery alone with her son in the visitation room. When he returned, he found Avery had taken off E.F.'s diaper and "was attempting to dig into the child's buttocks" to determine whether the foster parents had molested him.

Avery testified that she did not visit E.F. often because "it hurts her so badly when she would visit and then have to leave him." She admits that when E.F. is taken from her that she becomes very angry and wants to hurt people. She also testified that she did not know how she would take care of a "feisty little two-year-old," but she would try.

At the time of trial, E.F. had been placed in a foster home, and the foster family expressed a desire to adopt him.

## DISCUSSION

*Termination of Parent–Child Relationship*

In points of error one, two, three, and eight, Avery argues the trial court erred in terminating her parental rights under Family Code section 161.001 because: (1) her parental rights were terminated based upon her lifestyle; (2) some of her criminal convictions were too remote to sustain termination; and (3) section 161.001 permits termination of parental rights without evidence of current parental conduct. *See* TEX.FAM.CODE ANN. § 161.001 (Vernon 1975). We disagree.

The trial court terminated Avery's parental rights under paragraphs (D), (E), and (M) of section 161.001(1) and subsection 161.001(2) of the Family Code. Specifically, the trial court found that Avery:

knowingly placed or knowingly allowed the child(ren) to remain in condition or surroundings which endanger the physical or emotional well-being of the child(ren);

engaged in conduct or knowingly placed the child(ren) with persons who engaged in conduct which endangers the physical or emotional well-being of the child(ren);

had her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Texas Family Code Section 161.001(1)(D) or (E); and that termination is in the best interest of the child.

■ To support the trial court's ruling, we must hold that the State produced sufficient evidence that Avery engaged in conduct described in subsection (1)(D), (1)(E), or (1)(M). That is, if we determine the trial court's termination was proper under any one of the subsections, we need not reach the constitutional challenges of the remaining subsections. *See Williams v. Texas Dep't of Human Servs.,* 788 S.W.2d 922, 925 (Tex.App.—Houston [1st Dist.] 1990, no writ). Although Avery did not challenge the finding that termination is in the best interest of the child, that finding alone is insufficient to support the trial court's order. *See* TEX.FAM.CODE ANN. § 161.001 (Vernon 1995). The trial court may not terminate the parent-child relationship solely on the finding that it is in the best interest of the child. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex.1976); *Williams,* 788 S.W.2d at 927. Before it can terminate parental rights, the trial court must also find that the parent engaged in conduct described in subsection (1)(D), (E), or (M).

Section 161.001(1)(M) provides that a trial court may order termination of the parent-child relationship if the parent has had her parent-child relationship terminated with another child based on a finding that her conduct was in violation of paragraphs (D) or (E). Although Avery admitted that her parental rights were terminated with another child 17 years ago based upon paragraph (D) and (E), she claims that termination is too remote in time, and, therefore, is irrelevant to her current capacity to care for E.F.

To support her argument, Avery relies on *Hendricks v. Curry,* 401 S.W.2d 796 (Tex. 1966). In that case, the court addressed whether a child was "neglected" under the then existing parental-termination statute. *Id.* at 800. The court stated that "these provisions do not contemplate that an adjudication may be based solely upon conditions which existed in the distant past but no longer exist." *Id.* The facts in this case, however, are distinguishable from *Hendricks.* Here, the evidence shows that Avery's endangering conduct still persists. Her crimi-

nal record shows a pattern of criminal activity beginning in 1979 and continuing after E.F.'s birth. Avery admits that she has a history of using cocaine and alcohol, and that she used cocaine throughout her pregnancy. Avery also testified that she continued to use drugs as late as two weeks before trial.

Based upon this evidence, we hold the trial court could find by clear and convincing evidence that Avery's problems with crime and drug abuse still existed. The trial court did not err in considering the evidence of the earlier termination. Moreover, because we have determined that the trial court properly terminated Avery's parental rights under subsection (1)(M) and that Avery does not challenge the trial court's finding of termination in the best interest of the child, we need not address Avery's constitutional challenges to subsection (1)(D) and (1)(E). *See Williams,* 788 S.W.2d at 925.

We overrule points of error one, two, three, and eight.

### Insufficiency of Evidence

In points of error four through seven, Avery argues the evidence was insufficient to produce in the mind of the trial court a firm belief that she had engaged in conduct prohibited by paragraphs (D) and (E) of subsection 161.001(1) of the Family Code. However, because we held that the trial court's termination of Avery's parental rights was proper under paragraph (M), we need not determine whether the evidence was sufficient to support the termination under paragraphs (D) and (E).

We overrule points of error four through seven.

### Evidence of Avery's Prior Behavior and Criminal Convictions

In point of error ten, Avery argues the trial court erred in admitting evidence of her conduct before the time E.F. was born to establish grounds for termination of her parental rights. Specifically, Avery argues the introduction into evidence of her lengthy criminal record was improper and flies in the face of well-established law. We disagree.

The parental conduct to be examined in considering termination of parental rights includes what the parents did before and after the birth of the child. *In re Guillory,* 618 S.W.2d 948, 951 (Tex.App.—Houston [1st Dist.] 1981, no writ). Imprisonment of a parent, of and by itself, does not constitute conduct described by paragraphs (D) and (E) of subsection 161.001(1) of the Family Code; nevertheless, where it displays a voluntary, deliberate, and conscious course of conduct, it qualifies as conduct that endangers the emotional well-being of a child. *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533–34 (Tex.1987); *In re Guillory,* 618 S.W.2d at 951.

Here, Avery's past criminal record and behavior shows a conscious course of conduct and instability occurring both before and after E.F.'s birth. Most importantly, the evidence shows that Avery has not altered her behavior since the termination of the earlier parent-child relationship. The trial court, therefore, was correct in allowing evidence of her convictions and drug use.

We overrule point of error ten.

### Authority of Juvenile Master

In point of error nine, Avery argues the associate judge did not have authority to hear the termination proceeding because she did not consent in writing as required by TEX.FAM.CODE ANN. § 201.005(d) (Vernon 1996). In point of error eleven, Avery argues the associate judge also did not have jurisdiction to hear the matter under title 5 of the Family Code and section 54.688 of the Government Code. TEX.FAM.CODE ANN. §§ 101.001–264.701 (Vernon 1996)(title 5); TEX.FAM.CODE ANN. § 201.005(d) (Vernon 1996); TEX.GOV'T CODE ANN. § 54.688 (Vernon Supp.1997) (juvenile law master in Harris County). We disagree.

Government Code section 54.681(a) states, "A majority of the judges of the courts that are designated as juvenile courts in Harris County may determine that one or more full-time or part-time masters are needed to serve those courts." TEX.GOV'T CODE ANN. § 54.681(a) (Vernon Supp.1997). In this case, the 315th Judicial District was desig-

nated to be in the juvenile district court trial division by a 1977 order of the local board of judges. Sherry Van Pelt presided as juvenile law master over the trial. She was appointed under TEX.GOV'T CODE ANN. § 54.681 (Vernon Supp.1997).

Government Code section 54.688, which is part of the Harris County juvenile-law master statute, states that a judge may refer to a master any civil case or portion of a civil case brought under titles 1, 2, 3, or 4 of the Family Code. TEX.GOV'T CODE ANN. § 54.688 (Vernon Supp.1997) Government Code section 54.697, also describes the action the trial court may take on the master's report, but does not provide an avenue of appeals from the master to the district court.[1] TEX.GOV'T CODE ANN. § 54.697 (Vernon Supp.1997).

On the contrary, Family Code section 201.005, the general family-law associate-judge statute, provides a vehicle for objection to a trial on the merits by an associate judge and requires consent of all parties for the associate judge to hear a contested termination. TEX.FAM.CODE ANN. § 201.005(d) (Vernon 1995). Section 201.005 also sets out detailed rules for notice of the right to appeal to the referring court, procedures for waiving the right to appeal, and details for the procedure for an appeal to the referring court. TEX.FAM.CODE ANN. § 201.005(e) (Vernon 1995).

■ After reviewing both statutes, it is clear that a master or associate judge cannot preside under both the general family-law associate-judge statute and the special Harris County juvenile law master statute. Therefore, we must first determine which statute governs in this case. Typically, when "a general provision conflicts with a special or local provision, the provision shall be construed, if possible, so that effect is given to both." TEX.GOV'T CODE ANN. § 311.026(a) (Vernon 1988). If, however, "the statutes are irreconcilable, the special or local provision prevails over the general provision, un-

less the general provision is the later enactment and manifest intent is that the general provision prevail." TEX.GOV'T CODE ANN. § 311.026(b)(Vernon 1988).

In this case, we have a general provision in conflict with a special provision. Thus, under Government Code section 311.026(a), the special Harris County juvenile-law master statute will prevail unless the general family-law associate-judge statute was the later enactment and the legislature intended for that provision to prevail. The general family-law associate-judge statute, section 201.005, was enacted in 1979. Act of May 24, 1979, 66th Leg., R.S., ch. 719, 1979 Tex. Gen. Laws 1771 (TEX.REV.CIV.STAT.ANN. art.1918b, since repealed). The special Harris County masters statute, section 54.697, was originally enacted in 1987. Act of June 2, 2987, 20th Leg., R.S., ch. 674, § 3.03, 1987 Tex. Gen. Laws 2507, 2521. Therefore, section 54.697 prevails for both reasons—it is a special provision, and it was originally enacted later in time. *See Graf v. Harris County*, 877 S.W.2d 82, 84 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

Because the master in this case was appointed under Government Code section 54.681, she had jurisdiction over the case and had authority to hear the termination proceeding under section 54.697, which does not require Avery's consent.

We overrule points of error nine and eleven.

We affirm the trial court's judgment.

---

**1.** Government Code section 54.697 states:
    (a) After the court receives the master's report, the court may adopt, modify, correct, reject, or reverse the master's report or may recommit it for further information, as the court determines to be proper and necessary in each case.

    (b) If a judgment has been recommended, the court may approve the recommendation and hear more evidence before making its judgment.
    TEX.GOV'T CODE ANN. § 54.697 (Vernon Supp. 1997).