Affirmed and Opinion filed January 16, 2003















Affirmed and
Opinion filed January 16, 2003.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00350-CV

_______________

 

IN THE INTEREST OF S.M.E.

 

________________________________________________

 

On Appeal from the 315th District Court

Harris County, Texas

Trial Court Cause No. 01-01754J

________________________________________________

 

M E M O R A N D U M   O P I N I O N

            This
is an appeal by a grandmother from a judgment denying her possession of and
visitation with her granddaughter, S.M.E. 
In five issues, the grandmother, Lillene
Foster, contends: (1) the trial court erred in denying her a hearing de novo
under section 201.015 of the Family Code; (2) the trial court erred in denying
her the right to appeal the associate judge’s order; (3) the trial court erred
in signing its order the same day as the associate judge signed her order; (4)
the trial court erred in ruling that the associate judge’s order was a
“Master’s Report”; and (5) the trial court erred in denying grandparent access
to S.M.E.  We affirm. 




 








                                                 Background

            S.M.E.
is the daughter of Christopher Elrod and Leila Elrod, who married in 1999.  At the time of S.M.E.’s
birth, Leila was separated from Christopher Elrod and lived with her mother,
appellant Lillene Foster.  In fact, S.M.E. was born in Foster’s home.  Child Protective Services (CPS) removed S.M.E.
from Leila and this suit commenced.  

            At
trial, Christopher Elrod agreed to terminate his parental rights to S.M.E.,
hoping that his brother (with whom S.M.E. had been placed by CPS) could adopt
her.  Leila was killed during the pendency of this lawsuit. 


            Because
Foster sought possession of S.M.E., most of the evidence at trial focused on
her parental fitness and some of the more tragic aspects of Leila’s life.[1]  The record was replete with testimony about Foster’s
sexual abuse, poor parenting, and financial manipulation of Leila. 

            Trial
was before Sherry Van Pelt, appointed to serve as a special juvenile law
master.  The master signed orders
terminating Christopher Elrod’s parental rights to S.M.E. and denying Foster
both conservatorship of and access to S.M.E.  The trial court adopted the master’s orders
and then denied Foster an appeal de novo. 

 

                          Appeal from the Master’s Order

            In
her first four issues, Foster argues that Sherry Van Pelt was acting as an associate
judge rather than a special juvenile law master.[2]  Thus, Foster contends the trial court erred
as follows: (1) in ruling that Sherry Van Pelt’s order was a “master’s report”;
(2) in failing to hold a hearing de novo; (3) in denying the right to appeal;
and (4) in signing its order less than three days after Sherry Van Pelt signed
her report.

            If
Sherry Van Pelt presided by appointment as an associate judge under the Family
Code, her report could be appealed de novo to the district court.  Tex. Fam. Code Ann. § 201.015 (Vernon 2002).  However, appellant does not dispute the fact
that Sherry Van Pelt was appointed to serve as a juvenile law master for the
315th District Court under section 54.681 of the Government Code.  Tex. Gov’t Code Ann. § 54.681 (Vernon 1998) (the
“Harris County juvenile
law master statute”); Avery v. State,
963 S.W.2d 550, 554 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (discussing
Judge Van Pelt’s appointment as master for the 315th District Court under the Harris County juvenile
law master statute); cf. Tex. Fam. Code Ann.
§ 201.001 (Vernon 2002) (appointment of associate judges in family law
cases).  In this case, the trial court
specifically noted that the Harris County juvenile
law master statute was controlling.

            Foster
argues she is entitled to a de novo appeal and a second trial before the
presiding judge because Sherry Van Pelt referred to herself as an associate
judge and because her orders mention appeal to the district court under
sections 201.013 and 201.015 of the Family Code.  We disagree. 
“[A] master or associate judge cannot preside under both the general
family-law associate-judge statute and the special Harris County juvenile
law master statute.”  Avery, 963 S.W.2d at 554.  Because Sherry Van Pelt was appointed to
serve as a master under the Government Code, those specific provisions apply;
not the more general provisions in the Family Code.  See id.

            Thus,
the trial court did not err in ruling that Sherry Van Pelt’s order was a
master’s report.  Further, the Government
Code “does not provide an avenue of appeals from the master to the district
court.”  Id.  Instead, “the court may adopt, modify, correct, reject, or reverse the master’s report
or may recommit it for further information, as the court determines to be
proper and necessary in each case.”  Tex. Gov’t Code Ann.
§ 54.697 (Vernon 1998)
(emphasis added).  Therefore, the trial
court did not err in denying a hearing de novo. 
Additionally, the Government Code does not impose a waiting period
before the trial court may adopt the master’s report.  See id.  Accordingly, the trial court did not commit
error by adopting the master’s report on the same day Sherry Van Pelt signed
her report.

            Lastly,
we would require Foster to show harm resulting from the master’s confusion and
incorrect reference to appeal de novo under the Family Code.  Cf. In
re D.I.B., 988 S.W.2d 753, 760 (Tex. 1999) (supreme court reviewed for
harmful error the trial court’s confusion about which statute governed its
authority to grant probation to juvenile murder defendant); Tex. R. App. P. 44.1(a) (reversible
error is that which probably caused rendition of an improper judgment).  The language in the order regarding the right
to appeal under the Family Code is obviously misleading.  Nonetheless, the record in this case does not
reflect harm.  Even if Foster was
entitled to file an appeal de novo to the district court under the Family Code,
her notice of appeal was untimely. 
Section 201.015 of the Family Code requires an appeal to the district
court “not later than the third day after the date the party receives notice of
the substance of the associate judge’s report . . . .”  Such notice may be given orally in open
court.  Tex.
Fam. Code Ann. § 201.011(c)(1) (Vernon
2002).  The substance of Sherry Van
Pelt’s decision was revealed orally to Foster and her attorney during the
hearing on February
 22, 2002.  Foster
appealed to the presiding judge on March 8, 2002, several days after expiration of the statutory
deadline.

            Accordingly,
we overrule issues one through four. 

                            Denial of Grandparent Access

            In
her fifth issue, Foster contends the trial court abused its discretion in
denying grandparent access to S.M.E. 
Section 153.433 of the Family Code permits grandparent access to a child
under certain circumstances if such access is in the child’s best
interest.  Tex. Fam. Code Ann. § 153.433
(Vernon 2002).  A trial court has wide
discretion in determining the best interest of a child.  Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Lilley v. Lilley, 43 S.W.3d 703, 705 (Tex.
App.—Austin 2001, no pet.).  A trial
court abuses its discretion when it acts “unreasonably, arbitrarily, or without
reference to any guiding principles.”  Lilley, 43 S.W.3d at 705.  If the trial court’s order is supported by
sufficient evidence, there is no abuse of discretion.  Id.  Further, as the fact finder, the trial court
resolves conflicts in the evidence and determines the weight and credibility to
give to witness testimony.  Schneider v. Schneider, 5 S.W.3d 925, 931
(Tex. App.—Austin 1999, no pet.). 

            Foster
argues that she has been a part of one-year-old S.M.E.’s
life since birth.  She testified she is
capable of caring for S.M.E. and that Leila, through a signed power of
attorney, wanted her to assist S.M.E. 
Foster is prepared to provide food, shelter, medical attention, a safe
environment, finances, education, and extracurricular activities to develop S.M.E.’s potential. 
There is room for S.M.E. at Foster’s home.  Foster is employed with Humble Independent School
 District and arranged daycare for
S.M.E.  Further, she contends that she
has maintained a close relationship with her granddaughter through temporary
grandparent access during the pendency of
litigation.  She testified that she loves
her granddaughter.  Foster’s father (S.M.E.’s great-grandfather) testified in support of
Foster.  He claimed that Foster and Leila
had a close, loving relationship.  He
also denied that he ever sexually abused Leila or anyone else.

            In
contrast to this testimony, S.M.E.’s father, the
paternal uncle with whom she lives, her CPS caseworker, and her guardian ad litem all testified that it was not in S.M.E.’s
best interest to maintain contact with Foster and the maternal family.  The evidence shows that before her death,
Leila claimed sexual abuse by Foster and male family members.  Leila sought help at several women’s
shelters.  Further, she witnessed her
grandfather (S.M.E.’s great-grandfather) sodomizing
younger cousins with a stick in 1999 at Foster’s home.  Adult Protective Services investigated Foster
and other maternal family members for sexually abusing Leila, though such abuse
was not confirmed.  The evidence further
revealed that when Leila was fourteen, Foster arranged Leila’s first marriage
to a fifty-seven-year-old attorney with whom Foster had a romantic
relationship.  Additionally, Foster’s
current live-in boyfriend was initially reported to be S.M.E.’s
genetic father.  

            Further,
testimony at trial indicated that Foster had manipulated her daughter for
financial advantage.  Testimony indicated
that she and Leila’s first husband/attorney split a $2.5 million settlement
that Leila received as a child after a severe car wreck left her brain
damaged.  A member of Foster’s family
withdrew $10,000 from Leila’s account immediately after her marriage to S.M.E.’s father. 
Another family member lived on Leila’s land, which S.M.E. would inherit,
and claimed that Leila had given it to him by a purported holographic
will.  S.M.E.’s
father was concerned that Foster would similarly manipulate S.M.E. for
financial advantage.  The guardian ad litem testified that Foster discussed S.M.E.’s
money in front of the child.  The case
worker testified that Foster was overly concerned with material
possessions.  

            Testimony
at trial revealed that S.M.E.’s father and uncle were
afraid of Foster and her family.  The
uncle and CPS caseworker testified regarding an occasion when Foster, angry
after her supervised visit with S.M.E., nearly drove her Lincoln Navigator into
the uncle’s car (in which S.M.E. was a passenger).  While Leila was pregnant with S.M.E., she was
badly burned in Foster’s home.  Although
Foster claimed that Leila fell into the fireplace, it was intimated that
Foster’s live-in boyfriend, a felon, might have caused Leila to fall.  Foster also threatened to take S.M.E. to live
in the Cayman Islands.    

            Lastly,
S.M.E.’s uncle testified that he feared Foster would
not take care of S.M.E.’s special medical needs.  He explained that S.M.E. suffered from severe
reflux and a hernia.  On one visit,
Foster insisted on feeding S.M.E. mashed adult food, resulting in S.M.E.
vomiting several times and having diarrhea.

            Considering
all of the evidence in the record and the recommendations of the CPS caseworker
and guardian ad litem, we cannot say that the trial
court abused its discretion in denying grandparent access to S.M.E.  We thus overrule issue five.

            Having
overruled all five issues, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed January 16, 2003.

Panel
consists of Justices Edelman, Seymore, and Guzman.

 











            [1]  Leila sustained severe injuries, including brain
damage in a car accident that occurred when she was seven years old.  She received a $2.5 million settlement paid
on behalf of the defendants in litigation. 
When Leila was fourteen, Foster arranged Leila’s marriage to Leila’s
fifty-seven-year-old attorney, a man with whom Foster had been romantically
involved.  Apparently, there was evidence
that Foster and the attorney misappropriated Leila’s money.  As an adult, Leila was diagnosed with mental
illness and took medication for seizures. 
Shortly before her death, she had been confined at the Rusk State Hospital.  Leila was killed in a vehicle-pedestrian
accident. 





            [2]  She bases her assumption on the following paragraph,
which was present in the order signed by the master:

 

THE PARTIES ARE GIVEN NOTICE OF THE RIGHT TO APPEAL THE
FINDINGS AND RECOMMENDATIONS, AS REFLECTED BY THIS ORDER, OF THE UNDERSIGNED
ASSOCIATE JUDGE BY FILING A MOTION TO APPEAL TO THE [TRIAL COURT], WITHIN THREE
DAYS, PURSUANT TO SECTION § [sic] 201.015 
OF THE TEXAS FAMILY [CODE].