

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00226-CV

_____

IN THE INTEREST OF A.L.D., C.D., CHILDREN

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 9674-L1, Honorable Jack M. Graham, Presiding

September 10, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

J.N. appeals the termination of his parental rights to his son C.D.[1] In doing so, he contends the evidence is legally and factually insufficient to support the statutory grounds for termination and that termination is in the best interest of the child. We affirm the order.

The pertinent standard of review is discussed in *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Though a trial court may base its decision to terminate on multiple statutory grounds, sufficient evidence of only one ground is necessary to support

---

[1] J.N. is not the father of A.L.D. The parental rights of the mother of the two children were also terminated, but she has not appealed.

termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied).

*Statutory Grounds*

One ground upon which termination was sought and granted was that J.N. had his parental rights terminated with respect to another child based on a finding that his conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state.[2] *See* TEX. FAM. CODE ANN. § 161.001(1)(M) (West 2014) (stating that parental rights may be terminated if the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state"). A certified copy of an order in Cause No. 4900-L1 in the County Court of Law of Randall County terminating J.N.'s parental rights to his older son on April 21, 2008 was entered into evidence. That order showed that the grounds of termination included Paragraphs (D) and (E).

J.N. argues that the prior order was "too remote to the present proceeding" to warrant termination "without evidence of probable repetition of the prior offending acts." In support of that argument, he cites to a discussion of "remote acts" in *Wetzel v. Wetzel*, 715 S.W.2d 387, 390 (Tex. App.—Dallas 1986, no writ), *In re S.A.P.*, 169 S.W.3d 685, 704 (Tex. App.—Waco 2005, no pet.), and *V.W. v. Tex. Dep't of Human Servs.*, 810 S.W.2d 744, 751 (Tex. App.—Dallas 1991), *rev'd on other grounds,* 817 S.W.2d 62 (Tex. 1991). Those cases did not deal with termination under Paragraph (M).

---

[2] The trial court found that J.N. violated Paragraphs (D), (E), (M), (N), and (O) of § 161.001(1) of the Family Code.

Furthermore, the statute itself does not specify any kind of time period within which the prior order must have been rendered. And, we lack the authority to *sua sponte* add to or amend the legislative writing.

Third, J.N. did not make the argument to the trial court. Even constitutional claims can be waived, and J.N. did so here by not raising it below. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003).

Finally, the record contains the very evidence of repetition that appellant demands, that is, evidence of current endangerment. It illustrates that 1) J.N. admitted to current marijuana use, 2) he continued to allow his child to reside with the child's mother even though he knew she used drugs and he had used drugs with her, 3) the child tested positive for methamphetamine at the time of his removal from his mother's care, 4) J.N. refused to submit to drug testing during the entire time the child was in the custody of the State (except for one test in July 2013 at which time he tested positive for marijuana and methamphetamine), 5) he had engaged in domestic violence with the child's mother, 6) he had refused to allow caseworkers to see the inside of his residence, and 7) he had a criminal history of assaults, unauthorized use of a motor vehicle, possession of marijuana, criminal mischief, and a domestic assault in August 2012 after removal of the child. This evidence would support a finding that J.N. violated Paragraph (E). *See Avery v. State*, 963 S.W.2d 550, 552-53 (Tex. App.—Houston [1st Dist.] 1997, no writ) (holding that when a parent challenged termination under Paragraph (M), the court could conclude from the parent's criminal conduct before and after the child's birth and continued drug use that her problems with crime and drugs still existed). There is clear and convincing evidence that J.N. violated Paragraph (M).

*Best Interest of the Child*

In determining the best interest of the child, we look at indicia known as the *Holley* factors. They include, among other things, 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist those individuals to promote the best interest of the child, 6) the plans for the child by those individuals or by the agency seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent indicating that the existing parent/child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *In re P.E.W.*, 105 S.W.3d 771, 779-80 (Tex. App.—Amarillo 2003, no pet.). It is not necessary that each factor favor termination, *In re P.E.W.*, 105 S.W.3d at 790, and the list is not exhaustive. *In re C.J.F.*, 134 S.W.3d 343, 354 (Tex. App.— Amarillo 2003, pet. denied).

The evidence illustrating that termination was in the best interest of this four-year-old child includes the circumstances itemized above and establishing the statutory ground warranting termination. To that, we had testimony from a psychologist who 1) examined and described J.N. as defensive and unwilling to acknowledge weaknesses or problems, 2) said J.N. did not consider his marijuana use a problem, 3) stated that though J.N.'s only income was a monthly social security payment of $700 a month and he had no transportation, J.N. did not see any weaknesses in his ability to provide for a preschool child, and 4) opined it would be inappropriate for him to have custody because J.N. claimed to have bipolar disorder and Tourette's syndrome.

Additionally, a licensed counselor testified that J.N. 1) said he planned to keep on using marijuana, 2) took no responsibility for the involvement of the State in the custody of his child and blamed the child's mother, 3) believed all his criminal convictions were minor, 4) did not want to visit his child until he had complete custody, 5) admitted his home was messy and cluttered, and 6) did not respond to counseling and should not have custody. Other evidence revealed that: J.N. never had visitation with his child after removal from the home because J.N. refused drug screening; the child initially had developmental delays including unintelligible speech and was timid but at the time of trial was developmentally on target, social, happy, and bonded to his caregiver; the child perceives his foster home to be his only home and refuses to discuss his biological parents; the child lives in a home with his half-sister and half-brother; the child would be adversely affected by visitation with his biological parents as indicated by his anxiety and aggression after visitation with his paternal grandmother; the foster parent wants to adopt the child; and J.N. admitted the child was not safe with his mother but took no action to make other arrangements for the child. This is clear and convincing evidence from which a fact finder could determine that termination was in the best interest of the child.

Accordingly, the order of termination is affirmed.


Per Curiam

5