**Opinion issued May 2, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00891-CV

_____

## IN THE INTEREST OF G.G.C. AKA G.C.G., E.G.C., R.D.G.C. AKA R.G.C., K.S.G.M. AKA K.G.M., K.M.G.M AKA K.G.M. AND K.E.G.M. AKA K.G.M., CHILDREN

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-05388J**

---

## MEMORANDUM OPINION

After a bench trial, the trial court terminated the parent-child relationship between appellant, E.N.G., and her six children, G.G.C., E.G.C., R.G.C., K.S.G.M., K.M.G.M., and K.E.G.M. The mother challenges the order terminating her parental rights, contending that the evidence is legally and factually insufficient

to support the termination under Texas Family Code section 161.001(1)(E),(L), and (O), and under Family Code section 161.001(2). We affirm.

**Background**

E.N.G. is the twenty-six year old mother of six children under age ten: G.G.C., E.G.C., R.G.C., K.S.G.M., K.M.G.M., and K.E.G.M. Three children, G.G.C., E.G.C., and R.G.C., are boys while the other three, K.S.G.M., K.M.G.M., and K.E.G.M., are girls. The Texas Department of Family and Protective Services contacted the mother in January 2011, after it had received a report of negligent supervision. The report alleged that the mother had left the boys with a babysitter and failed to return, despite the fact that one of the boys required medical attention. DFPS workers could not further investigate the report because the mother denied caseworkers any access to the children.

DFPS workers investigated a second referral in August 2011. Caseworkers ruled out physical abuse at the time.

A third referral occurred in June 2012 when R.G.C., who was under age two, swallowed a rock of crack cocaine. The mother took R.G.C. to the hospital, where she told medical personnel that R.G.C. had consumed an unknown white substance. When R.G.C. tested positive for cocaine, the mother attempted to remove R.G.C. from the hospital against medical advice. She seized R.G.C. and carried him while running through the street, where a car nearly struck them. As a

2

result of this incident, the mother was convicted of child endangerment and received a sentence of four years' deferred adjudication. The trial court in the criminal case later revoked the mother's probation and sentenced her to six months' confinement because the mother had failed to comply with the terms of her community supervision.

This incident also led to DFPS's temporary managing conservatorship of the children. The children were returned to the mother in October 2013.

DFPS initiated the current termination proceedings in response to three additional reports received in April and May 2015. The reports alleged that the mother did not adequately supervise the children, sold drugs out of the home, and appeared disinterested in the children's education. The reports further alleged that the children lived in deplorable conditions, did not bathe regularly, and had poor hygiene, and that one of the children had been sexually abused by a sibling.

In May 2015, a DFPS investigator attempted to meet with the mother at her apartment, but no one was there. The landlord admitted the investigator into the home. The investigator discovered that conditions were deplorable: she found broken windows, expired food in the refrigerator, a foul odor, and gnats inside the home. The landlord told the investigator that the mother was unable to care for her children and had boasted of an attempt to steal a car.

After the home visit, DFPS interviewed the mother's friend Margo as well as Maria Sanchez, the paternal grandmother of some of the children. Both claimed that the mother sold drugs out of the home. On May 29, 2015, the mother tested positive for marijuana.

Although the mother refused to meet with DFPS in her home, she met with an investigator at her place of work in August 2015. At the meeting, the mother confirmed the location of her apartment complex, but told the investigator that she did not know the number of her apartment. The mother reported that she did not have a vehicle, she earned a salary of $300 per week, her apartment lacked furniture, and she did not know whether all of her children had received their vaccinations. The DFPS recommended that the mother participate in counseling, substance abuse treatment, and random drug tests, but the mother refused to complete these services.

In September 2015, DFPS petitioned for temporary removal of the children from the home, which the trial court granted in October 2015. The order stated that the mother's parental rights could be terminated if she did not meet each requirement set out in the service plan incorporated into the order. The order required that she:

- participate in all permanency conferences, court hearings, family visits and activities;

- abstain from engaging in criminal conduct, develop a realistic education or job skill plan, and demonstrate the ability to support the children financially

- complete anger management classes, a drug/alcohol assessment, a psychological evaluation, random drug tests, and individual therapy.

DFPS filed to terminate the mother's parental rights in September 2015 based on her failure to comply with the service plan. At trial, the caseworker testified that the mother had not completed the service plan. The caseworker further testified that two of the children had been acting out in a sexual manner and opined that the behavior was linked to their unstable upbringing.

The boys currently live together in a long-term placement where the foster parents are capable of managing treatment of their medical issues. The girls are also living together and doing well with their current foster family, which plans to adopt them. The caseworker opined that removing the children from their foster placement would be against their best interest.

The drug test results in evidence show that the mother tested positive for marijuana on May 29, 2015 and for cocaine on October 1, 2015; November 13, 2015; November 20, 2015; and December 3, 2015.

In her testimony, the mother acknowledged testing positive for cocaine but claimed that she had not used cocaine since she was a teenager. She admitted to having a past assault conviction and to having been involved in past abusive

relationships. She testified that terminating her parental rights was against her children's best interests.

At the conclusion of the bench proceeding, the trial court terminated the mother's parental rights. The trial court found that the mother (1) engaged in conduct that endangered the physical or emotional well-being of the children; (2) had been convicted for being criminally responsible for the death or serious injury of a child; and (3) had failed to comply with the provisions of a court order that established the actions necessary for the mother to obtain the return of the children from temporary managing conservatorship.

## Discussion

## I. Standard of Review

A parent's right to the care, custody, and control of her child is a liberty interest protected under the Constitution, and we strictly scrutinize termination proceedings on appeal. *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support an involuntary termination. *Holick*, 685 S.W.2d at 20 (citing *Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

When determining legal sufficiency in a parental-rights termination case, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of the judgment if a reasonable factfinder could have done so. *Id.* We disregard "evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true after conducting its legal-sufficiency review, the court must conclude that the evidence is legally insufficient. *Id.*

In determining factual sufficiency, we consider the entire record, including disputed evidence, to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" about the truth of the allegation sought to be established. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266.

To prevail in a termination case, DFPS must establish that one or more of the acts or omissions enumerated under Texas Family Code section 161.001(1) occurred and that the termination is in the best interest of the children, pursuant to section 161.001(2). TEX. FAM. CODE ANN. § 161.001. In this case, the mother challenges the trial court's findings that she endangered the children, that she failed to comply with the court-ordered family services plan, and that termination is in the best interest of the children.

## II. Evidence Supporting Grounds for Termination

The mother complains that the trial court's finding that she endangered the well-being of the children is not supported by legally and factually sufficient evidence. Under Section 161.001, one of the predicate findings for a parental-rights termination is satisfied if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). To "endanger" a child means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Although endangerment means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*

The mother tested positive for cocaine use and has a prior criminal conviction for child endangerment stemming from an incident in which one of her children ingested cocaine, requiring hospitalization. Drug abuse and its effect on the ability to parent can be evidence of an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Illegal drug use also creates the possibility that the parent will be impaired or imprisoned, as in this case, and thus incapable of parenting. *Walker*, 312 S.W.3d at 617. When a parent's imprisonment demonstrates a deliberate course of illegal conduct, that imprisonment qualifies as endangering conduct. *Id*. (citing *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ). Illegal drug use and the imprisonments from it harm the physical and emotional well-being of a child. *Id*. (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)). In addition, a parent's abusive and violent conduct in a family relationship may endanger a child's well-being. *Id.* (citing *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied)).

DFPS proffered evidence that the mother sold and used drugs. The mother has two criminal convictions: one for assault and another for child endangerment for the incident in which R.G.C. consumed cocaine and was almost struck by a car when she forcibly removed him from the hospital. We hold that legally and

9

factually sufficient evidence supported the trial court's determination that the mother endangered the wellbeing of the children.

A finding of one predicate factor, coupled with a finding that termination is in the children's best interest, is sufficient to support termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *see also Latham v. Dep't of Family & Protective Servs.*, 177 S.W.3d 341, 348 (Tex. App.—Houston [1st Dist.] Apr. 7, 2005, no pet.) ("A court may base a termination of parental rights upon a finding that a parent engaged in conduct described in one of the alleged grounds, plus a finding that termination is in the best interest of the children."). Having held that the evidence is legally and factually sufficient to support the trial court's finding of endangerment, we need not address the trial court's remaining grounds for termination.

## B.    Best Interest of the Children

The mother contends that the trial court's finding that terminating her parental rights was in the children's best interest is not supported by legally or factually sufficient evidence. The Texas Supreme Court has provided a non-exclusive list of factors that may be considered in determining whether the termination of a parent's rights is in a child's best interest. *Holley v. Adams*, 544

10

S.W.2d 367, 371–72 (Tex. 1976). These factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* The State need not prove all of the *Holley* factors as a condition precedent to parental termination. *In re C.H.*, 89 S.W.3d at 27. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child, but the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id*; *In re J.J.O.*, 131 S.W.3d 618, 630–31 (Tex. App.—Fort Worth 2004, no pet.).

The mother contends that DFPS's foster plan fails to provide a safe and long-term option for the children. DFPS proffered testimony, however, that the boys and girls are both doing well in their placements, with the boys' family willing to keep them long-term and the girls' family willing to adopt them. The

11

boys are living with a family that is capable of taking care of their medical needs. The girls are doing well in their placement.

The mother was convicted of child endangerment. DFPS presented evidence that E.N.G. did not maintain her house in a livable condition, and used and sold illegal drugs. The mother did not proffer evidence to rebut this evidence or to demonstrate an ability to care for her children. Though the mother testified that she had not recently used cocaine, she tested positive for it in multiple drug tests. The mother's acts and omissions demonstrate an inability to parent the children.

The record contains evidence that the mother removed R.G.C. from the hospital against medical advice, used and sold illegal drugs, and appeared disinterested in her children's education. Two of the children began acting out sexually because of their unstable home environment.

DFPS proffered evidence demonstrating the mother's inability to meet her children's needs. In August 2015, she did not have any furniture in her apartment and did not know if all of her children had been vaccinated. The family services plan stipulated that the mother participate in a twelve-step program, domestic violence support group, anger management classes, substance abuse assessment, psychological evaluation, random drug tests, and individual therapy. The mother completed the anger management courses, but was unsuccessfully discharged from the domestic violence therapy, and did not complete the individual therapy, twelve-

step program, or substance abuse assessment required by the plan. The mother's performance suggests that she will not make full use of available programs in the future to improve the children's living situation.

The mother proposed that the children live with her father. According to the mother, her father wanted all six children to live with him, and he had taken care of the children while she was in jail. DFPS testified that it performed a home study on E.N.G.'s father's home, but found her father's live-in girlfriend had a criminal conviction and would not release her financial information. The caseworker testified that the boys' foster family provides for their medical needs and plans to keep them long-term, while the girls are living with a foster family that provides a stable and supportive environment and is willing to adopt them.

Applying the relevant *Holley* factors, we hold that the evidence is legally and factually sufficient to support the trial court's finding that terminating the mother's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

## Conclusion

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

14