NO. 07-11-00501-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 5, 2012

_____

IN THE INTEREST OF A.J.R., A CHILD

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-554,982; HONORABLE KEVIN HART, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant "Frank,"[1] the father of A.J.R., appeals the trial court's order terminating his parental rights to the child, through a petition brought by the Department of Family and Protective Services.  Through four issues, Frank contends the trial court erred.   We will affirm.


Background


Frank, a long-haul truck owner and driver by occupation, had been married for some 34 years at the time of the final hearing in this case.  For the last seven years, Frank also engaged in a relationship with Heidi and that relationship produced A.J.R.,

_____

[1] Pursuant to Rule of Appellate Procedure 9.8, and to help protect A.J.R.'s identity, we will follow appellant's brief and refer to him in this manner.  Tex. R. App. P. 9.8.

born in November 2010. A.J.R. tested positive for cocaine at the time of his birth. He was placed in the care of foster parents just after his birth, and has never lived with Frank or Heidi. A.J.R. was ten months old at the time of the final hearing. Heidi did not appear at the final hearing. The court terminated Heidi's rights to A.J.R. at the conclusion of the hearing, but she has not appealed.[2]

Heidi had five children before A.J.R., born in 2003, 2004, 2005, 2007, and 2009. Her oldest four children were removed from her care in July 2008, after several months of family-based services from Child Protective Services. After her fifth child was born in 2009, she voluntarily relinquished her rights to all five children in June 2010. Although their relationship extended over much of this period of time, Frank was not adjudicated to be the father of any of those children.

Evidence showed that Frank lived with his wife in their home throughout his relationship with Heidi. Frank's encounters with Heidi took place in the sleeping quarters of his truck. Frank gave Heidi money, as much as $200 to $300 a week, paying "all of her bills [while she lived] in Lubbock." At one point during the course of their relationship, he also bought her a $700 car.

The evidence of Frank's awareness that Heidi was using drugs during her pregnancy with A.J.R. was disputed. Frank maintained he was unaware of Heidi's drug use until the child was born. The trial court concluded otherwise, as we shall later discuss.

---

[2] The court based termination of Heidi's parental rights on grounds of Family Code sections 161.001(1)(D), (E), (N), (O), (P) and (R). Tex. Fam. Code Ann. §161.001(1)(D), (E), (N), (O), (P), and (R) (West 2011).

Cynthia Bowen, a CPS caseworker involved in cases relating to Heidi and her four oldest children, testified at the final hearing. She testified those children were removed from Heidi's care in 2008 because of her cocaine use. Bowen testified, without objection, that in February 2008, Frank contacted the Department, coming to the Department's offices in person and also calling the Department, saying Heidi was using drugs.

Another caseworker, Tammie Birdwell, also testified Frank called the Department in 2008 and said Heidi was "partying." In his testimony, Frank denied making the calls.

Frank testified he did not use drugs, had no history of using drugs, and had clean drug tests. He completed parenting classes, provided diapers and toys to A.J.R., and visited the child weekly. The Department did not controvert that evidence. Frank argued he demonstrated he was able to provide for A.J.R.'s needs, had a committed marriage, and completed the services required of him by CPS. A counselor testified he conducted a home study and opined Frank's home was suitable for a young child. Frank and his wife have three adult children. His wife testified, opposing termination.

The trial court found that Frank "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" and "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child" and that termination of his parental right's was in A.J.R.'s best interests. Tex. Fam. Code Ann. § 161.001(1)(D), (E), (2) (West 2011).

3

Analysis

Applicable Law

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer,* 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A termination decree is complete, final, irrevocable, and divests for all time that natural right, as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Id*. at 20. Consequently, termination proceedings are strictly scrutinized. *In the Interest of G.M.*, 596 S.W.2d 846 (Tex. 1980). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Because of the rights at stake, due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West 2008); *In re C.H.*, 89 S.W.3d at 25-26.

The Family Code permits a court to order termination of the parent-child relationship if the petitioner establishes one or more acts or omissions enumerated under the statute and also proves that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (West 2011); *Holley v. Adams,* 544 S.W.2d 367, 370

4

(Tex. 1976); *see In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.) (only one statutory ground under section 161.001 required for termination of parental rights). Though the same evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *In re C.H.*, 89 S.W.3d at 28; *Holley,* 544 S.W.2d at 370.

In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West 2008); *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d at 266. Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

Reviewing the factual sufficiency of termination findings, we determine whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d at 25-26. Under that standard, we consider whether disputed evidence is such that a reasonable factfinder could not have resolved the dispute in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder

5

could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.; In re C.H.,* 89 S.W.3d at 25.

Section 161.001(1)(D) permits termination of the parental rights of a parent who knowingly places or knowingly allows the child to remain in conditions or surroundings which endanger the child's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(1)(D).

For purposes of subsection (D), "endanger" means to expose to loss or injury, to jeopardize. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). It is not necessary that the conduct be directed at the child or that the child actually suffers injury, or even that the conduct constitutes a concrete threat of injury to the child. *Id.* Drug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being. *In re J.M., N*o. 02-08-00259-CV, 2009 Tex.App. LEXIS 322 (Tex.App.—Fort Worth Jan. 15, 2009, no pet.) (mem. op.).

Under subsection (D), we examine the time before the child's removal to determine whether the environment itself posed a danger to the child's physical or emotional well-being. *See In re Q.W.J.*, No. 07-10-0075-CV, 2011 Tex. App. LEXIS 6635, at *15 (Tex.App**.**—Amarillo Aug. 18, 2011, no pet.) (mem. op.). Although the parent's conduct is not the focus of the inquiry under subsection (D), parental conduct may produce an endangering environment. *See In re D.T.*, 34 S.W.3d 625, 633 (Tex.App—Fort Worth 2000, pet. denied); *In re I.G.H.*, No. 07-10-0458-CV, 2012 Tex.App. LEXIS 1755, at * 6-7 (Tex.App.—Amarillo March 6, 2012) (mem. op.). The relevant conduct includes the parents' omissions or failures to act, as well as their

6

actions. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.--San Antonio 2000, pet. denied); *Edwards v. Tex. Dep't of Prot. & Reg. Servs.*, 946 S.W.2d 130, 138 (Tex. App.--El Paso 1997, no writ), *disapproved on other grounds by J.F.C.*, 96 S.W.3d at 267 n.39. Furthermore, as stated, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. *In re D.M.*, 58 S.W.3d 801, 812 (Tex.App.—Fort Worth 2001, no pet.); *Avery v. State*, 963 S.W.2d 550, 553 (Tex.App.—Houston [1st Dist.] 1997, no writ). Subsection (D) permits the termination of parental rights based on a single act or omission by the parent. *In re R.D.,* 955 S.W.2d 364, 367 (Tex.App.—San Antonio 1997, pet. denied). A father's failure to take any action to protect an unborn child from a mother who is using drugs during pregnancy is sufficient to establish that he knowingly allowed the child to remain in conditions and surroundings that endangered the child's well-being. *In the Interest of S.K.A.,* No. 10-08-00347-CV, 2009 Tex.App. LEXIS 6536 (Tex.App.—Waco Aug. 9, 2009, no pet.) (mem. op.).

The seminal case regarding the factors to be considered in determining whether termination is in the best interest of a child is *Holley,* 544 S.W.2d at 367. *Holley* enumerated nine factors a court may consider in making a best interest determination. *Id.* at 372. The *Holley* factors include: 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parenting abilities of the parties seeking custody, 5) the programs available to assist these persons, 6) the plans for the child by the parties seeking custody, 7) the stability of the home or proposed placement, 8) the acts or omissions committed by the parent which may indicate that the existing parent-

7

child relationship is not a proper one, and 9) any excuse for the acts or omissions committed by the parent. *Id.* These factors are not exhaustive; some listed factors may be inapplicable to some cases, while other factors not on the list may also be considered. *In re C.H.*, 89 S.W.3d at 27. Evidence that proves one or more of the statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *Id.* at 28. And, a best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In the Interest of D.S.,* 333 S.W.3d 379, 384 (Tex.App.—Amarillo 2011, no pet.).

Application

Lack of Notice of De Novo Hearing

Frank's first issue on appeal raises a procedural complaint. The final hearing was conducted before the associate judge. Frank sought a *de novo* hearing before the referring district court but it was denied because his request was untimely. Frank contends he was not provided the required statutory notice of his right to appeal the associate judge's ruling, causing his request for a *de novo* hearing to be filed three days late.

Family Code section 201.012 requires that all parties be given notice of the right to a *de novo* hearing of an associate judge's ruling by the referring district court. The statute provides the notice may be given: "(1) by oral statement in open court; (2) by posting inside or outside the courtroom of the referring court; or (3) as otherwise directed by the referring court." Tex. Fam. Code Ann. § 201.012 (West 2012).

Initiation of a *de novo* hearing of an associate judge's report is governed by section 201.015 of the Family Code, providing that a party may request the hearing by filing a written request "not later than the seventh working day after the date the party receives notice of the substance of the associate judge's report as provided by Section 201.011." Tex. Fam. Code Ann. § 201.015(a), (b) and (c) (West 2011).

The final hearing was completed on November 8, 2011. The parties received an oral rendition of the associate judge's report at that time. Frank filed his request for a *de novo* hearing on November 22, the tenth working day after oral rendition of the report. He filed a first supplemental request for a *de novo* hearing on December 9.

On December 12, a hearing was held before the referring court, at which time Frank's request for a *de novo* hearing was denied because of his untimely request. Frank presented evidence to show the notice required by § 201.012 was not given by oral statement in open court. Tex. Fam. Code Ann. § 201.012(c) (West 2012). He makes the same argument on appeal. Having reviewed the reporter's record of the final hearing, we agree the notice was not given by oral statement in open court. But the statute provides notice may be given by other means, and Frank's proof that notice was not given in one manner does not demonstrate notice was not given at all. Accordingly, we resolve Frank's first issue against him.[3]

---

[3] Both the Department and A.J.R.'s foster parents, who intervened in the case and have filed a brief on appeal, take the position section 201.012's notice requirement was satisfied by the written notice of the right to a *de novo* hearing contained in the associate judge's report and recommendation. The report and recommendation states that notice of its substance was given the parties "in open court." See § 201.011 (b), (c)(1) (West 2011). As noted, Frank is correct that the reporter's record of the final

9

Sufficiency of the Evidence

Grounds for Termination

In his second and third issues, Frank argues the evidence presented at the final hearing was insufficient to support either ground for termination found by the trial court. Specifically, he maintains the evidence shows he was not aware he was the father of A.J.R. until February 2011 and was unaware of Heidi's drug use until A.J.R.'s birth. While Frank challenges both grounds found by the trial court, we find the record supports termination under subsection 161.001(1)(D) and accordingly do not address his contentions as to subsection 161.001(1)(E). *See* Tex. R. App. P. 47.1.

At the end of the final hearing, the court expressed its firm belief that Frank knew he was A.J.R.'s father. The court stated it found Frank's testimony denying such knowledge "contrary to common sense" and "implausible," citing Frank's "prolonged unprotected sexual relationship with a woman who is having children during the course of that relationship." The court further expressed its disbelief of Frank's assertion that he thought Heidi was making use of birth control that would prevent his impregnation of her, notwithstanding her several pregnancies during their relationship.

---

hearing contains no oral statement in open court of the right to a *de novo* hearing. The appellate record also contains no indication the written report and recommendation, signed on the date of the final hearing, was given to the parties. It is unclear from the arguments of the Department and the intervenors whether they contend the written report and recommendation was given to the parties, or whether they contend its filing with the district clerk, on November 9, satisfied the notice requirement. We express no opinion on those questions.

The record contains evidence supporting the trial court's conclusion. The evidence begins, of course, with their seven-year-long intimate relationship. Too, while Frank contended he did not know he is A.J.R.'s father until blood test results were received in February 2011, there is evidence Heidi told him A.J.R. was his child prior to that time. Evidence shows Frank paid for Heidi's prenatal care during at least the last three months of her pregnancy with A.J.R. and visited A.J.R. at the hospital on the day he was born. He continued to visit A.J.R. after his birth, attending supervised visitations with Heidi until April 2011, when Frank finally made his wife aware of the child. Frank also acknowledged that Heidi told him another of her children, a girl, was probably his child.[4]

The trial court also expressed its firm conviction that Frank knew Heidi was using drugs during her pregnancy and during the course of their relationship, stating:

I am also going to find that [Frank] is, in fact, aware of the mother's drug use, based upon the testimony here today, and that his assertions that he wasn't are not credible. I am going to find that is based upon the multiple lies that the father acknowledged he made during the course of this case, in terms of his infidelity in addressing that issue with his wife, also his multiple inconsistencies in his testimony throughout the course of the two-day trial, and also in light of his multiple memory lapses throughout the course of his testimony in this two-day trial.

The evidence supporting this conclusion of the trial court begins with the testimony, which the trial court was free to accept, that Frank contacted the Department on several occasions in February 2008 regarding Heidi's drug use. He told the Department Heidi was "drinking, doing drugs and partying with other men, and that she

---

[4] Another man, referred to in the testimony both as Heidi's "husband" and her "boyfriend," was adjudicated in the earlier proceeding to be the father of Heidi's other five children but apparently only by virtue of his judicial admission of parenthood. This record makes no reference to blood testing of those children.

was not taking care of her children and the children weren't supposed to be with her and they were." While Frank later called the Department and said he lied about Heidi's drug use because he was jealous, the caseworker testified on cross-examination she was "absolutely positive" of Frank's calls, and that he reported Heidi was using drugs.

Although Frank testified he ended his relationship with Heidi when A.J.R. was born, suggesting he would have nothing to do with her once he learned of her drug use, the testimony of their joint supervised visits with A.J.R. for several months thereafter, when he clearly was aware of Heidi's drug use, casts doubt on Frank's assertion. The trial court also was not required to give great weight to Heidi's assertion, reported in a caseworker's testimony, that Frank did not know of her drug use.

From the testimony, the court could have concluded that Heidi's lifestyle and behavior during her pregnancy with A.J.R. had not changed from that in which she was engaging in 2008. She had another baby in 2009 who tested positive for drugs at birth and was consequently removed from her care at birth. Frank agreed when asked that he "had known for a long time" something was "wrong" with Heidi. Frank knew Heidi did not have a home but, at least at times, lived with her grandmother. He testified to giving her money for clothing, food, "bills," and other essentials. A caseworker testified Heidi's sister indicated to her Frank was giving Heidi money and realized the "money is going elsewhere." And, the record is clear drug use played a large role in Heidi's loss of her other five children.

Having reviewed the entire record, we find the trial court, as a reasonable factfinder, could have resolved the disputed evidence Frank knew Heidi was using

12

illegal drugs while she was pregnant with his child in favor of its findings, and thus rationally could have formed the firm convictions the court expressed on the record as to the truth of those allegations. There is evidence A.J.R. suffered withdrawal symptoms after his birth. Frank's failure to take any action to protect the unborn A.J.R. from Heidi's drug use during her pregnancy is sufficient to establish that he knowingly allowed A.J.R. to remain in conditions and surroundings that endangered the child's well-being. *Edwards,* 946 S.W.2d at 138, *In the Interest of S.K.A.,* No. 10-08-00347-CV, 2009 Tex.App. LEXIS 6535, at *9. The record supports termination under subsection 161.001(1)(D).

Best Interests of A.J.R.

By Frank's last issue, he argues that the Department failed to meet its burden to prove by clear and convincing evidence that termination of his rights to A.J.R. was in his best interests.

Again we begin with the summary of the evidence and conclusions expressed by the trial court. During its oral rendition, the court stated its clear belief that A.J.R.'s best interests were served by the termination of Frank's parental rights, expressing concerns that Frank's actions were motivated by self-interest rather than the interests of the child or his family. The court said, "I think that is evidenced by the fact that it was his intention, by his own admission here today and what he has told the therapist and what he has told his wife, that he wasn't even going to disclose the damaging revelation of his indiscretion and infidelity if he hadn't been caught by results of paternity testing."

The court further expressed concern over evidence that Frank had continued contact with Heidi and financial contributions to her.

Reviewing the sufficiency of the evidence supporting the trial court's finding of best interest, we keep in mind that it is the best interest of the child, not that of the terminated parent, that concerns us. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex.App.—Amarillo 2006, no pet.).

There is a strong presumption that the best interest of a child is served by keeping custody in the natural parent. *In re D.T.,* 34 S.W.3d 625, 641 (Tex.App.—Fort Worth 2000, pet. denied). We agree, however, with the trial court the record contains evidence sufficient to overcome the presumption that it is in A.J.R.'s best interest to be with Frank, his biological father, and to show it is in A.J.R.'s best interest that Frank's parental rights be terminated. There is evidence supporting the trial court's expressed concern that Frank is not fully committed to the care of A.J.R. We have found the evidence supports a firm conviction Frank knew he was the child's father well before his birth, and Frank received test results confirming his paternity in February 2011. But Frank kept the information of the child's existence from his wife and family for two more months until April 2011, when the child was five months old and he was adjudicated the father.

Frank's provision of diapers, toys and other items for A.J.R., his weekly visits with the child, and his completion of parenting classes and other Department requirements, cut against the trial court's conclusion, but the trial court could have considered the weight of that evidence was lessened by the testimony of a counselor that Frank was

14

not always forthcoming in their counseling sessions and "[i]t feels at times that there are things that he is still trying to hide." She also said "it seems that he is being evasive." Recall that the trial court expressed a similar reaction to Frank's trial testimony, referring to "multiple inconsistencies" and "multiple memory lapses."

The counselor also testified there were "recurring trust issues" between Frank and his wife and these issues may affect A.J.R. Frank's wife testified she was very angry when she learned of Frank's affair with Heidi and she initially wanted a divorce. However, she stated they are working on their marriage and attending therapy. She testified she and their grown children now regard A.J.R. as "a blessing," Frank would be a good and loving father, and A.J.R. would have a good home with them. At the same time, she had to concede their marriage was not yet "stable."

A counselor testified he conducted a home study and opined Frank's home was suitable for a young child. But on cross-examination he acknowledged he relied on information provided him by Frank's wife and daughters. A.J.R.'s foster mother testified to the desire she and her husband have to adopt A.J.R. Caseworker testimony emphasized that the child has lived with the foster couple since his birth, and is happy, thriving and bonded with the couple.

The court also heard the testimony of the conservatorship caseworker who expressed concern over Frank's continued contact with Heidi after the birth of A.J.R., contrary to his statement he ended their relationship because of her drug use. As noted, the record shows Frank and Heidi visited A.J.R. together until April 2011 when Frank told his wife about the child and she began going with Frank to visits. The

15

caseworker opined that placement of A.J.R. with Frank would present a danger to the child because of the possibility of contact with Heidi. There is evidence Heidi's family was in regular contact with Frank and that he told them they would be able to see A.J.R. if his rights were not terminated. In short, the trial court reasonably could have concluded that failing to terminate Frank's parental rights would leave open the risk that Frank would involve Heidi in A.J.R.'s life.

Considering all the evidence in relation to the best interest factors in the light most favorable to the court's finding, even considering conflicting testimony, the court could have formed a firm belief or conviction that termination was in the best interest of the child.

Having resolved each of Frank's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

16