# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00565-CV

**Albert Paul Rios, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 241388-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, the trial court terminated Albert Paul Rios's parental rights to his four daughters. On appeal, Rios challenges the legal and factual sufficiency of the evidence to support the trial court's findings that grounds exist to terminate his parental rights and that termination of his parental rights is in the children's best interests. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (1)(E), (2) (West Supp. 2011).[1] Rios also challenges the constitutionality of a statute that allowed the judge to question two of his daughters in chambers without notice, the presence of his attorney, or a transcript. *Id.* § 153.009 (West 2008). We will affirm.

---

[1] The statute governing involuntary termination of parental rights was amended effective September 1, 2011, but the amendments are not material to the issues in this case. We therefore cite to the current statute for convenience.

## FACTUAL AND PROCEDURAL BACKGROUND

In late October 2008, Rios was incarcerated for violating several terms of his probation for a 2005 burglary-of-a-habitation conviction.[2] The mother of his four daughters had been imprisoned earlier in the year on three counts of organized criminal activity involving burglary of a habitation. Because both parents were incarcerated, they gave temporary custody of their daughters to Rios's sister. The Texas Department of Family and Protective Services (the "Department") subsequently became involved and, in February 2009, held a family meeting regarding care of the children. Although the Department alleges that Rios's sister has a low IQ and a prior CPS history involving removal of her own children, the Department approved the placement of the children with Rios's sister based in part on a physician's recommendation that she could properly parent the children with the assistance of family members and community resources.

Approximately one year later, the Department learned that Rios's sister had, unbeknownst to the parents or the Department, voluntarily relinquished custody of the children to a foster family. The Department made this discovery when the foster parents reported that they could not adequately care for the girls because their aunt failed to provide their Medicaid information and documents necessary to enroll them in school. According to documents on file with the trial court, which were not admitted at trial, the foster family reported to the Department that, when they picked

---

[2] The probation violations included incidents of failure to report on a total of five occasions in 2006 and 2007, failure to make curfew on two occasions in 2006, using marijuana in January, April, and June of 2006, and receiving stolen property in June 2006. In addition, as of January 2009, the date the amended motion to revoke was filed, Rios was delinquent $165 for probation fees and $19 for urinalysis fees; the dates of Rios's failure to pay these fees is not specified in the motion to revoke probation. Rios may also have been arrested in May 2008 for "hindering apprehension." It is unclear whether he was ever arrested or formally charged with that crime, but if he was, charges were not pursued and the court that revoked his probation expressly declined to revoke on that basis.

the children up from their aunt's residence in Tennessee, the children were lice ridden, living in a filthy trailer, and had "peculiar marks on their bodies." There is also a notation that the girls reported to someone that they had been abused while in their aunt's care.

The Department interceded and instituted termination proceedings against Rios and the children's mother. While the termination proceedings were pending, the children lived with various foster families, each of whom expressed some desire to adopt the children. The original foster family decided against adoption, and there were allegations of abuse in the second foster family. The third foster family, however, who also wanted to adopt the children, was acceptable to the Department. The Department ruled out several family members as potential placements for the children, including the mother, who had been released from prison in September 2010.

The case proceeded to a bench trial before an associate judge in July 2011, while Rios was still incarcerated and awaiting a September 2011 parole hearing. *See id.* § 201.015(a)(West 2008) (authorizing referral of proceedings to associate judge). Before the trial commenced, the associate judge interviewed the two eldest children regarding their wishes for placement. The interview was not recorded, and the parents' attorneys were not present for the interview because the judge did not give them prior notice. Before evidence was presented at trial, the judge informed the parties about the interview on two separate occasions but did not disclose the substance of his conversation with the children, nor was he asked to do so. Rios's attorney did not object to the interview until shortly after the court began receiving evidence. During the course of the trial, it was revealed by the attorney ad litem for the children that the two girls expressed a desire to remain with the third foster family. At that time, Rios's counsel again objected to the court's consideration of

3

information received from the girls when they were interviewed without prior notice to the parents and without their attorneys' participation.

At trial, the mother admitted that she was unable to provide for the children at that time, was living in someone else's home, and was not gainfully employed; however, she testified that her boyfriend was willing to help support the children financially and that the children could live in the three-bedroom home she shared with him and his parents. Rios testified that he had completed a number of self-improvement courses—including a parenting course—while in prison, had job-placement resources through the prison upon his release, and would be living with relatives. He conceded that it was best for the children to be in alternate placement while he was in prison, but he had suggested other family members to care for them in his stead. Although he had a parole hearing scheduled for September 2011, he had been denied parole on three prior occasions and was not scheduled to complete his sentence until September 2014.

After the trial concluded, the associate judge terminated both parents' rights to their daughters on the grounds that (1) they knowingly allowed the children to remain in conditions and surroundings that endangered the physical and emotional well-being of the children, (2) they engaged in conduct that endangered the physical and emotional well-being of the children, and (3) termination of the parent-child relationship was in the children's best interests. *See id.* § 161.001(1)(D), (1)(E), (2) (providing grounds for involuntary termination of parent-child relationship). The Department was appointed managing conservator for the children and was authorized to place the children for adoption. The referring judge subsequently adopted the associate judge's written recommendation as the order of the court. *See id.* § 201.015(a) (West Supp. 2011) (request for de novo hearing before

4

referring judge must be made within seven working days after learning substance of associate judge's report).

Rios filed a combined motion for new trial to present new evidence concerning his release from prison and a statement of points on appeal, which asserted legal and factual insufficiency of the evidence to support termination of his parental rights. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332, repealed by Act of May 5, 2011, 82d Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349 (former Tex. Fam. Code Ann. § 263.405(i)) (requiring "statement of points" to be filed with trial court to preserve issue for appeal). The trial court held a hearing on the motion, at which Rios was present, having been released on parole on the same day the referring judge signed the termination order. The motion for new trial was denied, and this appeal followed.

On appeal, Rios contends that (1) section 153.009 of the family code, which authorizes a court to interview a child in chambers, violates his federal and state constitutional due-process rights, (2) the evidence is legally and factually insufficient to establish grounds for termination, and (3) the evidence is legally and factually insufficient to establish that termination of his parental rights is in his children's bests interests.[3]

---

[3] The children's mother did not appeal the order terminating her parental rights and is not a party to this appeal.

5

# DISCUSSION

### *Constitutional Challenge to Family Code Section 153.009*

At the time the trial court signed the termination order on August 16, 2011, the family code prohibited an appellate court from considering any issue "not specifically presented to the trial court in a timely filed statement of points on which the party intends to appeal or in a statement combined with a motion for new trial." Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (repealed 2011) (former Tex. Fam. Code Ann. § 263.405(i)). Although Rios's counsel twice objected to the trial court's having interviewed the two older children, this complaint was not stated in Rios's combined motion for new trial and statement of points. Therefore, in accordance with the plain language of the statute, we may not consider it on appeal.

Rios contends, however, that we should consider the issue in the interests of justice because the legislature repealed section 263.405(i) for final orders rendered on or after September 1, 2011. *See* Act of May 5, 2011, 82d Leg., R.S., ch. 75, §§ 8, 9, 2011 Tex. Gen. Laws 348, 349 (repealing former Tex. Fam. Code Ann. § 263.405(i)). While the order in this case was signed shortly before the effective date of the amended statute, Rios points out that his notice of appeal was not due until after September 1, 2011. The notice-of-appeal date is irrelevant, however, to whether former section 263.405(i) applies because the amended statute was expressly made applicable only to a final order rendered on or after the effective date of the amended statute, which repealed section 263.405(i). *Id.* § 8. Although we recognize that some appellate courts have considered issues not raised in a timely filed statement of points, those cases are distinguishable because they involve appellants who, unlike Rios, were without counsel or effectively without counsel during the

6

relatively short statutory period in which the statement of points must be filed.  *See LeShore v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00314-CV, 2011 WL 5516912, at \*2 n.2 (Tex. App.—Austin Nov. 10, 2011, pet. denied) (mem. op.) (trial counsel filed two motions to withdraw before final order was issued and did not file statement of points; however, before deadline for statement of points expired, appellant herself filed notice of appeal that included evidence-sufficiency grounds raised on appeal, and after deadline to file statement of points expired, appellate counsel was appointed and filed requisite statement of points); *In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (concluding that barring appellate review of termination proceeding under subsection 263.405(i) for indigent parent not provided with appellate counsel is fundamentally unfair and, therefore, deeming statement of points timely filed); *see also In re J.O.A.*, 283 S.W.3d 336, 342, 347 (Tex. 2009) (finding subsection 263.405(i) unconstitutional to extent it prevented court from considering ineffective-assistance-of-counsel and insufficiency-of-evidence claims) (citing *In re M.S.*, 115 S.W.3d 534, 543-46 (Tex. 2003)); *In re D.M.*, 244 S.W.3d 397, 414-15 (Tex. App.—Waco 2007, no pet.) (application of 263.405(i) violates due process rights when appellate counsel is not appointed until after deadline for filing statement of points); *cf. In re D.R.L.M.*, 84 S.W.3d 281, 291 (Tex. App.—Fort Worth 2002, pet. denied) (appellate counsel was not appointed until 15 days after termination order was signed and statement of points was filed next day by appellate counsel).  In addition, this is not a case in which no statement of points was filed, nor does it involve an untimely statement of points; rather, a statement of points was timely filed but was specifically limited to legal and factual sufficiency of the evidence to support termination.  Rios was represented by the same counsel at trial and on

7

appeal, and counsel was aware of the objections she had previously made concerning the court's interview with Rios's two older daughters; however, no corresponding complaint was raised in the statement of points. Unlike the cited cases, this case does not present a scenario in which we are compelled by the interests of justice to ignore clearly applicable statutory authority. Rios's first appellate issue is overruled.

***Termination of Parental Rights***

To terminate the parent-child relationship, there must be clear and convincing evidence that the parent committed one or more of the acts specifically set forth in family code section 161.001(1) and that termination is in the children's best interests. *See* Tex. Fam. Code Ann. §§ 161.001, .206(a) (West 2008). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008). Due process demands this heightened standard because of the fundamental interests at issue. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In this case, the trial court determined that clear and convincing evidence established that Rios (1) knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, a violation of section 161.001(1)(D) of the family code, and (2) engaged in conduct that endangered the children's physical or emotional well-being, a violation of section 161.001(1)(E) of the family code. *See* Tex. Fam. Code Ann. § 161.001(1)(D),

8

(1)(E). The trial court also found termination of the parent-child relationship to be in the children's best interests. *Id.* § 161.001(2). In his second appellate issue, Rios challenges the legal and factual sufficiency of the evidence of both the statutory grounds for termination and the best-interest finding. These grounds were presented to the trial court in a combined motion for new trial and statement of points and have been preserved for appellate review. *See* Tex. R. App. P. 33.1(d) ("In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief."); Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (repealed 2011) (former Tex. Fam. Code Ann. § 263.405(i)).

On appeal, we apply a standard of review that reflects the clear-and-convincing burden of proof. *In re J.F.C.*, 96 S.W.3d at 264-66. In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable factfinder could have reasonably resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually

9

insufficient. *Id*. In this case, the facts adduced at trial are undisputed; therefore, we consider all of the evidence in determining whether there is legally and factually sufficient evidence to support the termination of Rios's parental rights.

### A.    Termination of Parental Rights under Section 161.001(1)(D) and (E)

As used in the termination-of-parental-rights statute, endangerment means exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Boyd*, 727 S.W.2d at 533. Although an endangerment finding requires more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Rather, it is sufficient if the conduct endangers the child's emotional well-being. *Boyd*, 727 S.W.2d at 533.

While both subsections (D) and (E) of the parental-termination statute focus on endangerment, they differ regarding the source and proof of endangerment. Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *See, e.g.*, *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *In re W.S.,* 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ) (stating that "environment" refers not only to acceptability of living conditions, but also to parent's conduct in home). The parent's knowledge of the risk is an essential element for termination under subsection (D). Tex.

Fam. Code Ann. § 161.001(1)(D). Termination under subsection (D) is appropriate when the child's environment creates a *potential* for danger of which the parent is aware but disregards, but if the parent is unaware of a potential risk of endangerment, termination under subsection (D) is not appropriate. *In re S.M.L.*, 171 S.W.3d at 477. Living conditions that are merely "less-than-ideal" do not support a finding under this section. *See Boyd*, 727 S.W.2d at 533.

Under subsection (E), the cause of the endangerment must be the parent's conduct, and "[a] voluntary, deliberate, and conscious 'course of conduct' by the parent[] that endangers the child's physical and emotional well-being[] is required." *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied); *see also In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In reviewing an endangerment finding under subsection (E), we look to the parent's conduct both before and after the child's birth to determine whether termination is appropriate and consider both the parent's actions and failures to act. *In re J.O.A.*, 283 S.W.3d at 345; *In re A.S.*, 261 S.W.3d at 83; *In re J.W.*, 152 S.W.3d at 205. "'As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child.'" *In re J.O.A.*, 283 S.W.3d at 345-46 n.4 (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Imprisonment is a factor to be considered by the trial court on the issue of endangerment. *Boyd*, 727 S.W.2d at 533. It has been held, however, that mere imprisonment, standing alone, will not constitute engaging in conduct that endangers the emotional or physical well-being of a child. *Id*. Rather, if the evidence, including the fact of imprisonment, shows a course of conduct that has the effect of endangering the physical or emotional well-being of the

11

child, a finding under subsection (E) is supportable. *Id.* at 533-34. If the parent's imprisonment reflects a voluntary, deliberate, and conscious course of conduct, it qualifies as conduct that endangers the child. *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ). When a parent is incarcerated, they are absent from the child's daily life and may be unable to provide support; consequently, when a parent repeatedly commits criminal acts that subject him to the possibility of incarceration, it "can negatively impact a child's living environment and emotional well-being." *In re S.M.L.*, 171 S.W.3d at 479.

In this case, Rios was incarcerated on October 30, 2008, following revocation of probation. The children first came into the Department's care in February 2010, and the termination hearing was held in July 2011. The Department alleges that Rios repeatedly engaged in criminal acts that created a risk of incarceration and actually resulted in his incarceration on three occasions between 2005 and 2008. At the time of removal and at the time of trial, Rios was still incarcerated for violating the conditions of his probation on the burglary-of-a-habitation conviction, and he was not scheduled to be released from prison until September 2014.[4] Due to Rios's incarceration, the Department alleges, his children were subjected to a life of uncertainty and instability that may continue into the future, and Rios admitted at trial that he has been unable or only minimally able

[4] Although Rios had a parole hearing date scheduled for September 2011, parole decisions are inherently speculative. *See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (discussing effect of evidence of parole possibility in cases terminating rights under section 161.001(1)(Q) of family code). Although evidence of the availability of parole may be relevant to the issue of when an incarcerated parent will be released, parole-related evidence does not prevent a factfinder from forming a firm conviction or belief that the incarcerated parent will remain incarcerated until his release date. *See id*.

to financially support his children while incarcerated. As further evidence that Rios engaged in a course of endangering conduct, the Department contends that Rios's most recent incarceration resulted in his selecting a caregiver—his sister—who was unable to appropriately parent the children.

The Department alleges that Rios's sister has an IQ of 70 and prior history with the Department in which her own children were removed from her custody. However, it is undisputed that the Department approved placement of the children with Rios's sister based in part on the recommendation of her physician that she could adequately care for the children. It is undisputed that she ultimately was unable to do so and that she voluntarily relinquished custody to third parties, unbeknownst to the children's parents and the Department. Although the Department alleges that the children lived in deplorable conditions with their aunt and may have suffered physical abuse in her care, the Department's allegations are based on hearsay statements of the family who took possession of the children from their aunt, none of which were admitted at trial. The individuals who made these statements to the Department did not testify at trial, and the Department introduced no evidence of the actual physical surroundings or conditions of the children's environment.

In fact, the record contains no testimony regarding the conditions of any of the homes in which the children have lived—with or without their parents—and no evidence of "endangering" living conditions in which Rios knowingly placed or allowed the children to remain. *See* Tex. Fam. Code Ann. § 161.001(1)(D). There is neither evidence of Rios's sister's intellectual abilities nor evidence that he had knowledge of his sister's limited intellectual capabilities. Even if Rios's sister had an IQ of 70, as alleged, that fact alone is insufficient to establish that she could not adequately

13

care for the children, especially in this case, where it is undisputed that the Department approved the placement after it was made and a doctor had determined that Rios's sister could adequately care for the children. There is also scant evidence concerning Rios's sister's prior "CPS history." A Department witness merely read into the record a statement in a report that said Rios's sister's children had been removed and not returned to her custody. There is no evidence regarding the circumstances of removal or when it happened, nor is there evidence that Rios was aware of it. *Cf. In re D.J.*, 100 S.W.3d 658, 668-69 (Tex. App.—Dallas 2003, pet. denied) (holding mother's knowledge of father's criminal history and past drug use legally insufficient to show mother knowingly placed child in endangering environment because conviction was remote, drug use preceded child's birth, and father had shown stability in preceding few years). The mother of the children testified that she was aware that Rios's sister had a "CPS history," the nature of which was unspecified, but there is nothing in the record to indicate that her knowledge should or must be imputed to Rios. Rios was present at the trial and testified, but his knowledge regarding his sister's low intellect and CPS history was not explored and cannot be inferred from any of the evidence admitted at trial. Accordingly, there was no evidence that, at the time the children were placed with Rios's sister, the potential for endangerment was evident to Rios, the Department, or a treating physician. Likewise, there is no evidence that Rios acquired the knowledge required under section 161.001(1)(D) during the time his sister cared for the children. Therefore, we conclude that the evidence is legally insufficient to support the trial court's finding that Rios knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional

14

well-being of the children.[5]  *See* Tex. Fam. Code Ann. § 161.001(1)(D).  Nor can these circumstances be considered in determining whether Rios engaged in a "course of conduct" that endangered the children's physical or emotional well-being. *Id.* § 161.001(1)(E).

This determination, however, does not end our inquiry.  We must now consider whether the evidence is otherwise sufficient to establish that Rios voluntarily engaged in a deliberate and conscious course of conduct that endangered his children's physical and emotional well-being. *In re J.W.*, 152 S.W.3d at 205.  To that end, the record shows that Rios has had a troubled past.  In 2005, he was sentenced to seven years' imprisonment for burglary of a habitation, a second-degree felony.  Although the sentence was probated for ten years and Rios was placed on community

_____

[5] To support some of its allegations in this case, the Department refers to documents filed in the clerk's record, which include third-party statements regarding the children's living conditions with their aunt and statements from Department employees that provide further details about Rios's sister's intellect and the prior "CPS history" of the children's mother and Rios's sister.  Although the trial court took judicial notice of its file, this is not evidence we can consider as part of a legal-sufficiency review. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Dallas 2005, no pet.).  Rather, "we are limited to considering the material that was before the trial court at the time that it ruled . . . [and] documents not admitted into evidence are not considered by an appellate court." *Id.* (citations omitted).  While a court can take judicial notice of its own files and the fact that a pleading has been filed in a case, a court may not take judicial notice of the *truth* of allegations in its records, including affidavits. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Barnard*, 133 S.W.3d at 789; *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508-09 (Tex. App.—Austin 1994, no writ); *see also In re C.A.N.M.*, No. 02-04-00200-CV, 2005 WL 1356443 (Tex. App.—Fort Worth June 9, 2005, no pet.) (mem. op.).  We are not aware of any applicable exception.

This is not to say that trial courts can never take judicial notice of facts noted in its files.  To the contrary, rule 201 of the Texas Rules of Evidence specifically allows courts to take notice of certain adjudicative facts, provided the procedures specified in the rule are followed. *See* Tex. R. Evid. 201.  In this case, however, the cited facts do not qualify as adjudicative facts that can be judicially noticed under rule 201.  Therefore, the Department was not relieved of its obligation to bring forth admissible evidence to establish these facts, to the extent they are relevant to the Department's theory of the case. *See Barnard*, 133 S.W.3d at 789.

supervision, he repeatedly violated the terms of his probation. It is undisputed that, in a two-year period, he smoked marijuana on three occasions, missed curfew on two occasions, failed to report to his probation officer on five occasions, left the county without permission on one occasion, and was found to have received stolen property on one occasion. He also served approximately nine months in jail from June 2006 to March 2007; the reason for his incarceration is not specified in the record, but this period of time was credited to his sentence for the burglary-of-a-habitation conviction. At some point, Rios also became delinquent $165 on probation fees and $19 on urinalysis fees related to his community supervision. In May 2008, Rios admitted, he "caught a little—a charge in 2008 . . . hindering—something like that," but he said the charge was dismissed. In any event, the record reflects that this charge did not serve as a basis for revoking his probation on the earlier burglary conviction. At the time of the termination hearing, Rios was incarcerated, having been denied parole on three prior occasions.

Rios admitted that, during his periods of incarceration, he was unable or only minimally able to support his children financially. In addition, there is some evidence in the record that the children's mother was unable to care for them appropriately during the time periods he violated probation or was incarcerated from 2006 to 2007. A Department caseworker testified that the children's mother had a "significant prior CPS history" and that the Department "staffed" for a removal sometime in 2006 but was thwarted by the mother's temporary relocation to Louisiana. Thus, when Rios repeatedly violated the terms of his probation knowing that his community supervision could be revoked, he subjected his children to being left in the care of their mother, whose ability to care for them adequately was questionable. Conduct that routinely subjects a child

16

to the probability that the child will be left alone—or left without adequate care—because a parent is jailed endangers both the physical and emotional well-being of the child. *See Walker*, 312 S.W.3d at 617.

The record shows that, to a degree, Rios had a brief period of stability leading up to his incarceration for violating the terms of probation. Even considering the favorable inferences raised by this evidence, however, we hold that the evidence of Rios's prior drug use, criminal history, and demonstrated inability or unwillingness to comply with the terms of probation is legally and factually sufficient to support the court's finding the Rios engaged in a voluntary, deliberate, and conscious course of conduct that endangered his daughters' physical and emotional well-being.

## B.     Best Interests

In determining a child's best interest, the factfinder may consider a number of factors, including the desires of the child, the present and future physical and emotional needs of the child, the present and future emotional and physical danger to the child, the parental abilities of the person seeking custody, programs available to assist those persons in promoting the child's best interest, plans for the child by those individuals, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 n.39. The focus of the inquiry is on the child's best interest, not the parent's best interest, and the need for permanence is of paramount importance in considering a child's present and future emotional and physical needs. *See Dupree v. Texas Dep't of Protective & Reg. Servs.*, 907 S.W.2d 81, 86-87 (Tex. App.—Dallas 1995, no writ). There is a strong presumption that the child's best interest will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Parental rights may not be terminated merely because a child might be better off living elsewhere. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, a factfinder can consider that the best interest of the child may be served by termination of parental rights so that adoption may occur rather than the impermanent foster-care arrangement that would result if termination were not ordered. *D.O. v. Texas Dep't. of Human Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 n.39.

The evidence regarding endangerment, discussed above in support of the trial court's finding under section 161.001(1)(E), is also probative of the best-interest finding. This evidence shows that Rios committed a significant crime after two of the children had been born, and while on probation for that crime, he continued to reoffend and repeatedly committed violations of his probation, which ultimately caused his probation to be revoked. At the time of trial, he was incarcerated with only a speculative chance at being released before his September 2014 release date.

18

*See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (observing that parole decisions are inherently speculative). A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 940-41 (Tex. App.—Waco 1997, pet. denied), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 n.39 *and In re C.H.*, 89 S.W.3d at 26.

Rios testified that he was young when he became a parent but that he took parenting and drug-education classes while incarcerated and believes he has learned how to better himself and how to take better care of his responsibilities. There is no evidence that Rios used any drugs after 2006, and it is undisputed that he complied with the service plan offered by the Department, even though he was incarcerated. However, Rios testified that he had no home—stable or otherwise—and no means of contributing financially to the children's support, although he was minimally able to provide support during an earlier period of incarceration. In addition, from the time termination proceedings were instituted through the time of trial, Rios was unable to identify a suitable placement for the children, and he admitted "that right now at this moment it's best for them to be in someone else's care" due to his incarceration. Although he testified that resources were available to assist him in finding employment once he is released from jail, the factfinder need not have assigned conclusive significance to this testimony, which is highly speculative at best.

In contrast, there is evidence that the children currently are healthy and in a stable and loving home with foster parents who desire to adopt all of the children. While the foster mother testified that she was also willing to keep the children if parental rights were not terminated, stability and the need for permanence are of paramount importance in considering a child's present and future

19

emotional and physical needs. *See Dupree*, 907 S.W.2d at 86-87. Indeed, "[t]he goal of establishing a stable, permanent home for a child is a compelling state interest." *Walker*, 312 S.W.3d at 619. A factfinder may consider the consequences of its failure to terminate parental rights and may consider that the children's best interests may be served by terminating parental rights so that adoption can occur, rather than subjecting them to the impermanence of a foster-care arrangement. *See D.O.*, 851 S.W.2d at 356.

Applying the appropriate standards of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that grounds existed to terminate Rios's parental rights to his four daughters and that termination was in their best interests. We therefore overrule Rios's second appellate issue.

## CONCLUSION

Having overruled both of Rios's appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   July 11, 2012

20