

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00219-CV

_____

IN THE INTEREST OF P.W., A CHILD

---

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 19-5347-16

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

In two issues, Appellant Mother appeals the trial court's termination of her parental rights to her daughter, P.W. She complains of the trial court's admission of certain photos as overly prejudicial and of its admission of certain orders and testimony as improper judicial testimony. Because she has failed to preserve some of her complaints and because other rulings were either not erroneous or not harmful, we affirm the trial court's order terminating her parental rights.

## Background

Appellee the Department of Family and Protective Services (the Department) received reports in 2019 of concerns about Mother's drug use and the instability of her living environment with P.W.[1] It took investigator Latisha Walker about ten attempts to finally reach Mother by phone in February and when she did reach Mother, it took time for her to persuade Mother to meet in person to discuss the Department's concerns. They met in a hotel room where Mother and P.W. were living at the time— throughout the proceedings, Mother lived in multiple hotels and never had a stable apartment or home. Mother admitted to Walker that she had a history of marijuana and

---

[1]This was not Mother's first interaction with the Department. She was investigated in 2011 after her then-toddler son wandered out of their apartment while she was napping. She tested positive for cocaine use during that investigation, the son was removed from her care, and the Department concluded that she had been neglectful in supervising her son. At the time of trial in the instant proceeding, Mother had not seen her son in "a few years."

cocaine use, but she claimed she had not used drugs since 2015. Walker requested that Mother take a drug test and have P.W. tested for drugs, but Mother did not complete any drug testing until she was court-ordered to do so in June 2019. At that time, Mother tested positive for marijuana and cocaine usage, and P.W.'s results indicated that she may have ingested cocaine. At that point, the Department petitioned for removal and to terminate Mother's parental rights; when Walker located Mother and P.W., they were living in another hotel.

Mother was placed on a service plan with the goal of reuniting her and P.W.; though she participated in some services, her Department caseworkers testified at trial that her participation was largely inconsistent. She missed some visitation sessions with P.W. One caseworker testified that she did not feel that Mother was honest and made excuses that she was too busy to do the services, even when services were available virtually due to the COVID-19 pandemic. Mother admitted at trial that she had not made every effort to complete the service plan and that she could have made a better effort.

At the time of the June 2021 trial, Mother had not visited P.W. since October 2020. And in addition to her unstable housing, Mother's employment had changed "a few times" and there were periods in which she was unemployed.

While she participated in some counseling sessions, Kelvin Smith, her counselor of a year and a half, testified at trial that her attendance was "very inconsistent" and she failed to show up to a few appointments. He testified that there were "several times"

when she was in danger of being discharged from the program due to nonattendance. Smith concluded that because he had not had "enough consistent sessions with [Mother] to know where she is emotionally [or] financially," he did not think she was ready to have P.W. returned to her.

Mother continued to use drugs while the proceedings were pending. She failed drug tests and failed to comply with the Department's requests for testing and with court orders for drug testing. Mother admitted to her caseworkers and at trial to relapsing with marijuana and cocaine during the proceedings. Mother's visitation was eventually suspended because of concerns regarding her continued positive drug tests; even after that, Mother failed to comply with drug-testing requests and orders.

Mother's drug use had resulted in criminal charges more than once, in addition to her involvement in prostitution. In 2013, she was arrested in Louisiana in connection with a prostitution-ring bust.[2] Though she admitted at trial that she was charged with "letting prostitution," she alleged that it was not true and that she was visiting her son at the time that a large prostitution ring was uncovered by police, resulting in her charge. The Department presented her with a 2013 Waco newspaper article that mentioned her in connection with the prostitution-ring sting, but Mother alleged that the article was "false." She could not remember the outcome of the charges. She was arrested in 2015 in another prostitution-ring sting operation, that time in El Paso, and she pleaded

---

[2]Mother also admitted to pleading guilty to a 2007 theft charge.

guilty to the charges. In 2016, she was arrested for marijuana and cocaine possession and evidence tampering[3] in Florida.

At trial, Mother dismissed her criminal history by saying that it was prior to her having P.W. and that P.W. had "changed her life" and that she had not been in trouble with drugs since P.W.'s birth in December 2017. But her reasoning was called into question when evidence was admitted showing that she had been arrested for drug possession in 2019. She pleaded guilty to the charge and was on probation for that conviction at the time of the termination trial. She also admitted to relapsing in January and April 2021.

In May 2021, shortly before the June 2021 trial, Mother was involved in an altercation at a bar that resulted in her being shot in the face. When asked what would happen with P.W. if Mother's probation were revoked in connection with the May bar fight and shooting, Mother said "she has family," but she also admitted that she had not discussed that possibility with any family.

The jury agreed with the Department's recommendation to terminate Mother's parental rights and found that Mother had (1) knowingly placed or allowed P.W. to remain in conditions or surroundings that endangered P.W.'s wellbeing, (2) engaged in conduct or knowingly placed P.W. with persons engaging in conduct that endangered

---

[3]A police report admitted into evidence at trial stated that Mother had attempted to swallow a baggie of cocaine during the arrest.

5

P.W.'s well-being, (3) constructively abandoned P.W., and (4) failed to comply with the terms of the court-ordered service plan. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (N), (O). It also found that termination was in P.W.'s best interest. *See id.* § 161.001(b)(2). The trial court entered judgment accordingly, and this appeal followed.

## Discussion

Mother does not challenge the evidentiary sufficiency supporting the jury's findings of any of the grounds for termination or their best-interest determination, but instead complains of the trial court's admission of two photos and certain prior court orders and testimony. Because we cannot conclude that the trial court abused its discretion by admitting the evidence, we overrule Mother's issues and affirm the trial court's judgment.

### I. Standard of Review

We review the trial court's admission of evidence for an abuse of its discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. We must uphold the

trial court's evidentiary ruling if the record shows any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

## II. Admission of photos

During Mother's cross-examination, the attorney ad litem for P.W. offered two screenshots of text conversations that included photographs of Mother in states of undress and in sexually suggestive poses. Mother alleged that the photos "were stolen out of [her] phone." When asked if it was her in the photos, Mother responded, "Okay[,] I am a beautiful person. You don't take pictures?" Mother's counsel objected to the admission of the photos on the basis of relevance and "the timing of the particular photo." Mother testified that the photos were "old" and were possibly taken in the last two to five years. The trial court overruled the objection.

On appeal, Mother argues that the trial court erred because the photos were more prejudicial than they were probative, they constituted improper character evidence, and they were not properly authenticated. *See* Tex. R. Evid. 403, 404(b), 901(a). None of her complaints are successful.

### A. Rules 403 and 404(b)

Rule 403 allows a trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Rule 404(b) provides that evidence of extraneous offenses is not admissible "to prove a person's character in order to show

7

that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b). Mother presents Rule 403 and 404(b) arguments on appeal, but at trial her objection was limited to the photos' relevance and "the timing of the particular photo." By failing to present Rule 403 and 404(b) arguments to the trial court, she has waived them.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

Mother's basic relevance objection did not present the trial court with a Rule 404(b) extraneous-offense argument or a Rule 403 argument; she has therefore failed to preserve either. *See O'Dell v. Wright*, 320 S.W.3d 505, 512 (Tex. App.—Fort Worth 2010, pet. denied), *abrogated on other grounds, Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 151 n.6 (Tex. 2015). For instance, a relevancy objection argues that the evidence has no tendency to make a determinative fact more or less probable; a Rule 403 objection implicitly admits that the evidence does have such a tendency but urges it is substantially outweighed by certain dangers, including the risk of unfair prejudice. *See* Tex. R. Evid. 401, 403. Mother argued at trial that the photos were irrelevant, not that their probative value was substantially outweighed by the risk of unfair prejudice

8

or that they were improper character evidence. She therefore did not preserve those arguments.

Even if we were to treat her appellate argument as one of simple relevance, we still cannot conclude that the trial court erred. In parental-rights-termination cases, the child's best interest is always the primary concern. *See Garza v. Garza*, 217 S.W.3d 538, 555 (Tex. App.—San Antonio 2006, no pet.). The evidence established Mother's criminal history involving prostitution in multiple cities and states, though she denied her involvement and made excuses for her arrests. It was within the trial court's discretion to determine that the photos, sent as a text-message thread to someone else and during the past two to five years,[4] were relevant to the jury's role in weighing Mother's credibility of denying her involvement in prostitution rings. Her involvement in prostitution was relevant to the determination of P.W.'s best interest and the trial court did not err by admitting the photos. *See In re N.K.*, 399 S.W.3d 322, 329–32 (Tex. App.—Amarillo 2013, no pet.) (considering mother's history of operating a prostitution ring in evaluating the evidentiary sufficiency supporting termination on endangerment grounds); *In re D.M.*, 58 S.W.3d 801, 813–14 (Tex. App.—Fort Worth 2001, no pet.) (holding similarly regarding mother's history of prostitution and drug arrests).

---

[4]P.W. was born in late 2017, so even if the photos were five years old at the time of the June 2021 trial, they were taken about a year before Mother became pregnant with P.W. In any event, evidence of conduct prior to a child's birth is relevant to the child's best interest. *See, e.g., Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ).

We therefore overrule the Rules 403 and 404(b) arguments in Mother's first issue.

## B. Authentication

Alternatively, Mother argues that the trial court erred because the photos were not properly authenticated, but Mother also failed to preserve this argument. Mother's objection at trial was to "the timing of the particular photo" within the context of her objection to relevance. She did not object on the basis of authentication, and her objection did not suggest her intent to challenge the photos' authenticity. *See Manalan v. State*, No. 14-17-00088-CR, 2019 WL 922287, at *4 (Tex. App.—Houston [14th Dist.] Feb. 26, 2019, pet. ref'd). She therefore waived her argument for purposes of appeal. Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1).

However, even if we were to assume—without deciding—that her objection to "the timing of the particular photo" preserved an authentication argument, we disagree with her assumption that the trial court erred. Evidence is properly authenticated if the proponent produces evidence "sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). For instance, a witness with knowledge of the item can testify that it is "what it is claimed to be." Tex. R. Evid. 901(b)(1). While the trial court determines authenticity as a preliminary matter, it is ultimately the jury's decision whether the evidence is what the proponent claims. Tex. R. Evid. 104(a); *see also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

On appeal, Mother argues that the exhibit was not properly authenticated "because there [is] no proof that it was a fair and accurate depiction of [Mother] without

10

being photo shopped with say, her head on someone else's body." This argument was never presented at trial, and in any event, the exchange between Mother and the attorney ad litem established that it was Mother in the photos and that the photos came from her phone:

> [The children's Attorney ad Litem]. [I will s]how you what I have marked as Ad Litem's Exhibit 3. Do you recognize that?
>
> [Mother]. These are pictures that were stolen out of my phone.
>
> Q. Are they pictures of you?
>
> A. Okay. I am a beautiful person. You don't take pictures?
>
> . . . .
>
> This is irrelevant. This is a picture that somebody stole out of my cell phone. And they stole my cell phone, and they knew I was fighting CPS. So they tried to use this against me, but unfortunately - -
>
> . . . .
>
> They knew who to exactly send that picture to, so that is invalid.
>
> . . . .
>
> It's a picture of my nipple. Why do you want to show them that?
>
> . . . .
>
> Q. Okay. You're an adult in the photos, correct?
>
> A. Yes.

Her identity argument therefore fails.

Likewise unsuccessful is her argument that "there was no proof that [the photos were] a fair and accurate depiction on a relevant date or time." Mother provided no support for this assertion, nor have we found any. Mother's testimony establishes that

11

it was her in the photos. She testified that they were taken in the last two to five years. And as far as whether they were from a "relevant date or time," evidence predating the child's birth is still relevant to an endangerment finding and the determination of a child's best interest. *Avery*, 963 S.W.2d at 553. We therefore overrule the remainder of her first issue.

## III. Admission of prior court orders and testimony about them

In her second issue, Mother argues that the trial court erred by admitting temporary orders, permanency-hearing orders, and drug-test orders, as well as allowing certain testimony about the temporary-orders hearing resulting in a drug-test order. The orders and testimony centered upon the trial court's orders that Mother complete drug tests and abstain from drug use, its November 2019 determination that any visitation should be supervised until Mother could demonstrate compliance with the service-plan requirements, and its subsequent determination that Mother's visitation should be suspended until Mother successfully passed a drug test.

### A. The complained-of evidence and testimony

At trial, a caseworker testified that after a June 2019 hearing, the trial court required Mother to submit to a drug test and have P.W. drug tested. After that hearing, the trial court issued temporary orders that detailed the requirements necessary for P.W.'s return to Mother. The version of the temporary orders admitted into evidence at trial was redacted to remove the trial court's fact findings underlying its decision to remove P.W. from Mother's care and to name the Department as the temporary

12

managing conservator. Drug-test orders dated November 2019, February 2020, June 2020, and June 2021 requiring urine and hair tests were also admitted into evidence.

Similarly redacted permanency-hearing orders issued in November 2019 and January 2021 were also admitted into evidence at trial, though each contained the language, "The Court finds that the visitation between [P.W.] and Mother must be supervised to protect the health and safety of [P.W.]."[5]

The jury also heard testimony that Mother's visitation with P.W. was suspended in early 2021 on the condition that she provide a negative drug-test result in order to regain her visitation privileges. While Mother admitted in her trial testimony that visitation had been suspended, she claimed she did not know why. Later testimony by a Department caseworker clarified that it was because of her continued drug use:

> Q. At some point, were [Mother]'s visits with [P.W.] suspended?
>
> A. Yes.
>
> Q. Why was that?
>
> A. There [were] concerns regarding her continued positive drug testing.
>
> . . . .
>
> Q. Do you know what was required of her to get her visitation back?

---

[5]In her brief, Mother attributes this language to the temporary orders, but it was actually contained in the permanency-hearing orders.

A.      Yes.

Q.      What was that?

A.      She needed to submit to drug testing and provide a negative drug test result.

**B. Applicable law**

At trial, Mother objected to the drug-test orders and the caseworker's testimony on the basis that they "invade[d] the province of the jury." Generally speaking, that objection is too broad and imprecise to preserve error. *Missouri Pac. R. Co. v. Cooper*, 563 S.W.2d 233, 238 (Tex. 1978); *Carr v. Radkey*, 393 S.W.2d 806, 812 (Tex. 1965).[6]

Nevertheless, we interpret Mother's argument on appeal as one of improper judicial testimony, prohibited so strictly by the Texas Rules of Evidence that a party need not object to preserve a judicial-testimony argument. Tex. R. Evid. 605. The Texas Supreme Court has interpreted the admission of prior court orders "containing findings based on pretrial evidence by the very judge presiding over the termination proceeding"

---

[6]As the court observed in *Carr* of a similar objection,

> The function of the witness is to give information which will be helpful to the jury. The province of the jury is to believe or disbelieve, weigh evidence, and to evaluate it. The witness could not invade that province if he wanted to. . . . [T]he phrase is so misleading, as well as so unsound, that it [w]ould be entirely repudiated. It is a mere bit of empty rhetoric. . . . [T]he phrase if taken literally is absurd. It suggests that the jury may forego independent analysis and bow too readily to the opinion of an expert or otherwise influential witness. This indicates a mistrust of the mentality and capacity of jurors to decide matters for themselves.

*Id.* (internal citations and quotations omitted).

to be "like a judicial comment on the weight of the evidence, a form of judicial influence no less proscribed than judicial testimony," and a violation of Rule 605:

> A comment on the weight of the evidence may take many forms, but this Court specifically prohibits judicial comments that indicate the opinion of the trial judge as to the verity or accuracy of the facts in inquiry. Here, the jury was permitted to see findings of fact made by the very judge presiding over the trial, and those facts were the very ones that the jury itself was being asked to find. The fact-finding present in the orders admitted as evidence comes far too close to indicating the opinion of the trial judge as to the verity or accuracy of the facts in inquiry for any comfort here.

*In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003) (internal citations and quotations omitted).

However, the Supreme Court expressly noted that "admitting . . . orders as evidence in support of the Department's position that [the appellant] failed to comply with the orders of a court was not in itself inappropriate." *Id.* It explained that the trial court's findings that his order had been violated should have been redacted "so that the jury could draw its own conclusions as to whether [the appellant] had complied." *Id.*

In determining whether something amounts to an improper comment on the evidence, we look to whether the trial court's "statement of fact is essential to the exercise of some judicial function or is the functional equivalent of witness testimony." *In re C.C.K.*, No. 02-12-00347-CV, 2013 WL 452163, at *33 & n.45 (Tex. App.—Fort Worth Feb. 7, 2013, no pet.) (mem. op.) (citing *Hammond v. State*, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990), and noting that in *Bradley v. State ex rel. White*, 990 S.W.2d 245, 248 (Tex. 1999), the Texas Supreme Court relied on Texas Court of Criminal Appeals's interpretations of Rule 605).

## C. Application

### i. The temporary orders, drug-test orders, and caseworker testimony

In this case, the temporary orders[7] were redacted as suggested by the Court in

*M.S.* The unredacted version included in the clerk's record contains the trial court's

findings that the Department had established sufficient evidence to warrant removing

P.W. from Mother's care and name the Department as temporary managing

conservator. The version entered into evidence did not include that section of findings.

It did include the trial court's requirements for the return of P.W., including completing

drug assessments and drug testing and refraining from all criminal activity and use of

controlled substances.

The caseworker's testimony of the trial court's order that Mother submit herself

and P.W. to drug testing did not constitute or contain any fact findings by the trial court.

Rather, like the redacted temporary orders, they established the requirements for return

and also supported the Department's argument that Mother failed to meet those

requirements and comply with court orders. As such, it is clear that the temporary

orders, drug-testing orders, and caseworker's testimony did not constitute improper

judicial comments on the testimony. *See M.S.*, 115 S.W.3d at 538; *see also In re M.M.*,

No. 14-18-00881-CV, 2019 WL 1387964, at *17 (Tex. App.—Houston [14th Dist.]

---

[7]Mother's counsel did not object to the admission of the temporary orders or the permanency-hearing orders, but as we have noted no objection is necessary for preservation of a Rule 605 argument. Tex. R. Evid. 605.

Mar. 28, 2019, no pet.) (mem. op.) (holding admission of order for drug testing did not violate Rule 605).

In regards to the caseworker's testimony that Mother's visitation privileges were suspended, we recently addressed a similar situation in *In re K.E.*, No. 02-20-00045-CV, 2020 WL 4360493, at *5–6 (Tex. App.—Fort Worth July 30, 2020, pet. denied) (mem. op.). In that case, the appellant mother complained of the admission of testimony by a caseworker of the cessation of visits, arguing that it effectively told the jury that the trial court had already determined that the appellant had endangered her children and removal was in the children's best interests. *Id.* at *5. We rejected her argument, explaining that the caseworker had not testified to any trial court findings nor otherwise conveyed to the jury that it was the trial court's decision to halt visitation:

> Instead, the caseworker's testimony focused on a *therapist* serving as the gatekeeper of the children's visitation with Mother. Although a question posed to the caseworker asked about visits being "reinstated," neither the question nor the answer informed the jury that a judge, as opposed to a therapist, held the keys to visitation.

*Id.* at *7.

The caseworker's testimony in this case likewise did not point to the trial court as the gatekeeper of visitation, and we conclude that the testimony did not violate Rule 605.[8]

---

[8]In her brief, Mother argues that an "order suspending visitation" was admitted into evidence, but she provides no citation to the record for such an exhibit. If she was referring to the permanency-hearing orders, her complaint fails on this ground because

### ii. The permanency-hearing orders

Lastly, we turn our attention to the permanency-hearing orders and the requirement of supervised visitation to protect P.W.'s health and safety:

**4.      Visitation Plan: [Mother]**

> 4.1.    The Court finds that visitation between [P.W.] and [Mother] **must be supervised to protect the health and safety of [P.W.]** The Court further finds that [Mother] must take the following specific steps to have [the] level of supervision reduced:
>
> 4.2.    [Mother] will need to comply with all stipulations of her visitation plan and must be actively participating in all court-ordered services and all additional services listed in the Family Plan of Service. [Mother] must be able to demonstrate the willingness and ability to provide a safe environment for the child.

Even assuming, without deciding, that the finding that supervision was necessary to protect P.W.'s health and safety violated Rule 605, any error in the orders' admission was not harmful and therefore not reversible error. *See M.S.*, 115 S.W.3d at 538. We will not reverse a trial court's judgment because of an erroneous evidentiary ruling unless the ruling probably, though not necessarily, caused the rendition of an improper judgment. *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018).

It was Mother's burden to show that she was prejudiced by the admitted orders, *see M.S.*, 115 S.W.3d at 538, but she did not bother to do so in her brief. Additionally,

---

neither of those orders that were admitted into evidence refers to the suspended visitation. Both orders merely repeat the requirement of supervision.

the Department did not bring the "health and safety" language to the jury's attention at trial, and it did not specifically base any of its argument on that particular finding as repeated in the permanency-hearing orders. *See id.* at 539 (considering the same as indicating error was harmless); *In re A.T.K.*, No. 02-11-00520-CV, 2012 WL 4450361, at *5 (Tex. App.—Fort Worth Sept. 27, 2012, no pet.) (mem. op.) (same).

Finally, to any extent that the order related to the jury's ultimate findings, there was ample other evidence supporting those findings. *See* Tex. Fam. Code Ann. § 161.001(b). Mother failed to comply with several provisions of the service plan; most prominent was her failure to stay clean and stop abusing drugs. She admitted at trial that she had relapsed more than once during the termination proceedings, that she had tested positive multiple times, and that she had been arrested twice for drug possession during the proceedings. At the time of trial, she had not seen P.W. in eight months and did not have a stable home for P.W. to live with her. She was inconsistent in her attendance at counseling and unresponsive to the Department's attempts to communicate with her. She largely refused to take personal responsibility and instead blamed the Department for her failures in staying clean and meeting her other requirements. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing nonexclusive factors relevant to the best-interest determination). We therefore cannot conclude that any error in admitting the permanency-hearing orders was harmful. *See A.T.K.*, 2012 WL 4450361 at *5; *In re T.T.*, 39 S.W.3d 355, 360 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding admission of temporary orders with court findings

did not harm appellant father because ample evidence supported finding that he had abused children).

We therefore overrule Mother's second issue.

## Conclusion

Having overruled Mother's two issues on appeal, we affirm the trial court's order terminating her parental rights to P.W.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  December 23, 2021